## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GEORGE DALE WIGINGTON** | § | **CASE NO. 18-42230** |
| *dba* **WYLIE INDUSTRIES** | § | |
| *dba* **WYLIE INVESTMENT GROUP,** | § | **CHAPTER 13** |
| | § | |
| **Debtor.** | § | |
| _____ | § | |
| | § | |
| **GEORGE DALE WIGINGTON** | § | |
| | § | **ADVERSARY NO. 19-04074** |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **NATIONSTAR MORTGAGE LLC** | § | |
| **DBA MR. COOPER and** | § | |
| | § | |
| **SELECT PORTFOLIO SERVICING, INC** | § | |
| | § | |
| **Defendants.** | § | |

### FOURTH AMENDED OBJECTION TO PROOF OF CLAIM 4-1 AND COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW George Dale Wigington, ("Debtor" and "Plaintiff") and files this Fourth Amended Objection to Proof of Claim 4-1 And Complaint ("Objection" or "Complaint") and would respectfully show the Court the following.

### I. JURISDICTION AND VENUE

**1.** This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

**2.** This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A, B, C, and K).

**3.** Venue for this adversary proceeding in the Eastern District of Texas, Sherman Division, is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II. PARTIES

**4.**      Plaintiff, George Dale Wigington, is an individual residing in Dallas County, Texas.

**5.**      Defendant, Nationstar Mortgage, LLC, is a Delaware limited liability company, whose principal office is at 8950 Cypress Waters Boulevard, Coppell, Texas 75019.  Service of process may be had upon Nationstar Mortgage, LLC by mailing via regular and certified mail, return receipt requested, a copy of the Summons and Complaint to its agent for service Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.

**6.**      Defendant, Select Portfolio Servicing, Inc., is a Utah corporation whose principal office is at 3217 S Decker Lake Drive, Salt Lake City, Utah 84119.  Service of process may be had upon Select Portfolio Servicing, Inc. by mailing via regular and certified mail, return receipt requested, a copy of the Summons and Complaint to its agent for service Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.

## III. CONDITIONS PRECEDENT

**7.**      All conditions precedent have occurred or been performed in association with Plaintiff's causes of action and affirmative defenses.

## IV. NOT USED

## V. PROCEDURAL BACKGROUND

**8.**      This case was commenced when Debtor filed a bankruptcy petition on October 2, 2018 to prevent the sale of his home at a foreclosure auction scheduled later that day.

**9.**      Nationstar Mortgage LLC d/b/a Mr. Cooper, ("Nationstar") filed a proof of claim ("Claim #4") in the amount of $134,203.89 for money loaned on November 7, 2018.

**10.**      Debtor filed a Chapter 13 plan was filed on November 5, 2018 [DOC 15 Case 18-42230].

2

**11.**     The Chapter 13 plan was confirmed on April 22, 2019. [DOC 30 Case 18-42230].

**12.**     The Trustee's Reconciliation Concerning Claims was filed and served on August 2, 2019 [DOC 37 Case 18-42230].

**13.**     Debtor filed his Original Objection to Proof of Claim 4-1of Nationstar Mortgage LLC D/B/A Mr. Cooper; Action to Determine the Validity, Priority, And Extent Of Lien; And Complaint on August 23, 2019 [DOC 38 Case 18-42230].

**14.**     Select Portfolio Servicing, Inc. ("Select Portfolio") filed a Transfer of Claim for Claim #4 on October 23, 2019 [DOC 41 Case 18-42230].

## VI. STATEMENT OF FACTS

*Background*

**15.**     In the Fall of 2004, Debtor sought to obtain a home by purchase.

**16.**     Debtor entered into a contract for sale on a house sitting on 5.397 acres (the "Property") which contemplated that the Debtor would obtain financing to fund the purchase.

**17.**     The Debtor did not have cash with which to purchase the home and was required to obtain a loan in order to acquire the home.

**18.**     The Debtor would not have obtained the loan, but for his desire to acquire the home and considered purchasing the home and obtaining the loan to be a single, intertwined transaction.

**19.**     On December 29, 2004, Plaintiff closed on a home on approximately 5.397 acres (the "Property").  As partial consideration for the purchase, Plaintiff executed a promissory note (the "Note") in the original principal amount of $216,000.  Since that time, Debtor has always used the Property as his personal residence.

**20.**     The North Texas Municipal Water district conveyed the Property to Plaintiff and his wife in a Warranty Deed dated December 29, 2004 which was filed in the Dallas County Clerk's office.

**21.**     In order to secure repayment of the Note, Plaintiff executed and delivered a Deed of Trust

(the "Deed of Trust") to Robert K. Fowler wherein ABN AMRO Mortgage Group, Inc. ("ABN

AMRO") was the beneficiary. The Property is more particularly described in the Deed of Trust.

**22.**     ABN AMRO merged into Citimortgage, Inc. ("Citimortgage") on September 1, 2007.

*First Bankruptcy Case*

**23.**     On April 4, 2011 Plaintiff and his wife filed a Chapter 13 bankruptcy petition, Case 11-

41092.

**24.**     On November 30, 2011 Citimortgage filed a proof of claim ("Claim #28") [Claim 28 Case

11-41092] asserting a secured claim in the amount of $159,937.34, which included $1,065.31 in

arrearage.  This claim was based on the Note and the Deed of Trust. A true and correct copy is

attached as EXHIBIT 7.

**24.1.**   The copy of the Note attached to Claim #28 contains no indorsement. A Certificate of

Merger of ABN AMRO MORTGAGE GROUP, INC. into CITIMORTGAGE, INC which had been

filed with the New York Secretary of State is attached to Claim #28.

**25.**     The Chapter 13 case was converted to a Chapter 11 case at debtor's request on April 12,

2012.

**26.**     Debtor's Second Joint Combined Plan and Disclosure statement ("Confirmed Chapter 11

Plan" or "Plan") [DOC 316 Case 11-41092] was filed on May 4, 2013. A true and correct copy is

attached as EXHIBIT 8.

**27.**     Chapter 11 Ballots were filed on May 28, 2013 [DOC 335 Case 11-41092]. The ballot of

Citimortgage, p. 7, indicates that it accepted the plan and that Citimortgage was a "Class 2 creditor

. . . in the unpaid principal amount of $167,453.92."  A true and correct copy of page 7 is attached

as EXHIBIT 9.

**28.**     The Chapter 11 Plan was confirmed on June 4, 2013 [DOC 338 Case 11-41092].

4

*Assignment to Nationstar*

**29.**     Three years after plan confirmation, Citimortgage assigned the Deed of Trust to Nationstar,

identifying itself "Citimortgage, Inc. successor by merger to ABN AMRO Mortgage Group, Inc."

on August 26, 2016. A true and correct copy is attached as EXHIBIT 16.

**30.**     The assignment was filed in the Dallas County Clerk's office on or about August 26, 2016.

Plaintiff had no knowledge of the assignment of the Deed of Trust until a copy was provided to him

by Lewis in June or July of 2017.  Plaintiff's earlier searches did not locate the filing because it did

not reference Plaintiff's name and did not link to the original Deed of Trust in the clerk's filing

system.

**31.**     Nationstar mailed Plaintiff a notice of servicing transfer dated August 29, 2016. A true and

correct copy is attached as EXHIBIT 19.

**31.1.**    In the notice, Nationstar states:

> The servicing of your mortgage loan is being transferred, effective 08/16/16.

> This communication is for informational purposes only and is not intended as an
> attempt to collect, assess, or recover a claim against, or demand payment from, any
> individual protected by the U.S. Bankruptcy Code.

> Our records indicate the loan is currently in an Active Bankruptcy Status. If this
> information is incorrect, please contact us immediately at (877) 343-5602.

> Our records indicate the loan is currently in an Active Bankruptcy Status.

> Send all payments due on or after 08/16/16 to Nationstar Mortgage at this address:
> > P.O. Box 650783
> > Dallas, TX 75265-0783

**32.**     Nationstar mailed Plaintiff a notice related to a bankruptcy filing dated August 31, 2016. A

true and correct copy is attached as EXHIBIT 20.

**32.1.**    In the bankruptcy notice, Nationstar states:

> Our records indicate you recently filed bankruptcy.

If you filed for protection under Chapter 7, and would like to reaffirm the debt please contact our office at 877-343-5602 to request a Reaffirmation Agreement.

If you are mailing your payment, please send to the following address and include your loan number.

>Nationstar Mortgage LLC
>P.O. Box 619094
>Dallas, TX 75261-9741

This letter is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the United States Bankruptcy Code.

**33.**    Debtor's counsel was copied on the correspondence at an address that was at least eight months old. Debtor's counsel had moved and started using his new address in his filings on or before December 2, 2015. A true and correct copy of filings containing Debtor's counsels new address is attached as EXHIBIT 68.

**34.**    Nationstar provided two different payment addresses in their first two communications to Plaintiff sent only three days apart.

**35.**    Nationstar never filed a notice of transfer of claim for Claim #28 in the Debtor's bankruptcy case. A true and correct copy of Nationstar's Second Amended Response to Request for Admissions in the state court action is attached as EXHIBIT 55.

>**REQUEST FOR ADMISSION NO. 27:** Admit that Nationstar Mortgage LLC never filed a Transfer of Claim to change the mailing address to which payments should be sent.
>**RESPONSE:** Admit.

**36.**    Nationstar never amended the proof of claim on file to amend either the party holding the claim or the address at which payments were to be sent.

>**REQUEST FOR ADMISSION NO. 28:** Admit that Nationstar Mortgage LLC never filed an amendment to the Proof of Claim to change the mailing address to which payments should be sent.
>**RESPONSE:** Admit.

6

**37.**  Nationstar did not monitor or access the P.O. Box address provided for payments in the proof of claim for Claim #28.

> **REQUEST FOR ADMISSION NO. 39:** Admit that Nationstar Mortgage did not monitor or access P.O. BOX 6941; LAKES, NV 88901-6941 to obtain the payments that Plaintiff mailed to that address.
> **RESPONSE:** Admit.

**38.**  Nationstar generated correspondence to Debtor's attorney dated February 4, 2017 which is shown on Nationstar's website as "Mod Solicitation – 745" with a date associated of "Feb 10, 2017." A true and correct copy is attached as EXHIBIT 21.

**38.1.**  This "First Mod Solicitation" letter lists what was an outdated address for Debtor's attorney on the date of the letter.  Debtor was only aware of letter because it was posted on Nationstar's website.  In this letter Nationstar states:

TO RECEIVE HELP WITH THE
MORTGAGE, YOUR CLIENT MUST ACT BY:
03/06/2017

> Our records indicate that you represent George Wigington and Teresa Wigington in the above Bankruptcy proceedings. As of the date of this letter, the loan referenced above is now 30 days or more past due and the above loan is in default. We are concerned about the missed mortgage payment(s) and want your client to be aware of the assistance available to bring the loan current.
>
> Our records indicate that your client is currently in an active Bankruptcy proceeding. The attached forms and information make references to the avoidance of foreclosure. Please be advised that no foreclosure actions will take place so long as the automatic stay remains in effect in the Bankruptcy proceeding.

**38.2.**  This correspondence was addressed to Debtor's counsel at an address that he had updated in the court's files more than a year earlier.

**39.**  Nationstar mailed Plaintiff correspondence dated February 24, 2017 regarding available loss mitigation options.  A true and correct copy is attached as EXHIBIT 22.

**39.1.**  In this "Loss Mitigation" notice, Nationstar writes:

> Your mortgage payment is now 30 days or more past due and as our prior letters have stated, we are here to help. Call us today to learn more about your options and instructions for how to apply.

**40.**    Nationstar mailed Plaintiff correspondence dated February 28, 2017 regarding a default under the terms of Plaintiff's note and deed of trust. A true and correct copy is attached as EXHIBIT 23.

**40.1.**   In this "Default Notice" Nationstar states:

> Your loan is currently past due for the 01/01/2017 payment and is due for all payments from and including that date. The failure to make these payments is a default under the terms and conditions of the mortgage loan. This is a demand for a payment of $4,462.88, which is the total amount due and owing as of the date of this letter.

> You have the right to cure the default by paying the total amount due listed above, within 30 days from the date of this letter which is 03/30/2017.

> You also have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

> NATIONSTAR IS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE CURRENTLY IN BANKRUPTCY OR HAVE RECEIVED A DISCHARGE IN BANKRUPTCY, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY TO THE EXTENT THAT IT IS INCLUDED IN YOUR BANKRUPTCY OR HAS BEEN DISCHARGED, BUT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

**41.**    In response to Plaintiff's discovery requests, Nationstar sent Plaintiff tracking reports generated on "5/22/2018" which are used by Nationstar to document mailings. A true and correct copy is attached as EXHIBIT 24.

**41.1.**    The tracking report documents that as of "3/1/2017 4:29:00 AM" the Default Notice still had not been deposited into the U.S. Mail. The status provided for that time event states "PRE-SHIPMENT INFO SENT USPS AWAITS ITEM at TEMECULA, CA" indicating that the post office was still awaiting the document.

**41.2.**   The Notice of Default was placed in the mail on or after March 1, 2017.

**41.3.**   Thus, Nationstar gave notice on March 1, 2017 that the alleged default must be cured by March 30, 2017. Counting the day that notice was given, March 1, and excluding the date on which the default must be cured, March 30; Nationstar provided only a 29-day notice, not a 30-day notice as required under the Deed of Trust.

**42.**   Nationstar's accelerations of the debt on May 2, 2017, June 12, 2017, July 10, 2017, and September 5, 2018 were each based on this one notice of default which provided only a 29-day notice of default. Consequently, each purported acceleration of the debt was in violation of the Deed of Trust.

**43.**   Nationstar's three notice of foreclosure sales were based on these wrongful accelerations. Consequently, they were in violation of the Deed of Trust.

**44.**   After receiving Nationstar's production documents, Plaintiff had a conference with Durham regarding the "Mailbook Image 888050.tif" document shown near the bottom of the tracking report. Plaintiff requested that Nationstar produce the document as it was responsive to Plaintiff's discovery requests—as were the tracking reports. Durham responded, "No, I think you have what you need."

**45.**   Nationstar mailed Plaintiff correspondence dated March 3, 2017 regarding a dedicated loan specialist. A true and correct copy is attached as EXHIBIT 25.

**45.1.**   Therein, Nationstar wrote:

> Printed above is the name of your Dedicated Loan Specialist. This person will serve as your single point of contact to help you explore available options that could help you avoid foreclosure. The sooner you call, the sooner you might find a solution to your mortgage needs.

> Everyone at Nationstar Mortgage is committed to helping homeowners like you find solutions that could help you avoid foreclosure, stay in your home, and continue enjoying all the benefits of homeownership.

**45.2.**   Nationstar has assigned nine different Dedicated Loan Specialists to Plaintiff.

**46.**    Nationstar generated correspondence to Plaintiff's attorney dated February 4, 2017 which is shown on Nationstar's website as "Mod Solicitation – 745" with a date associated of "March 21, 2017." A true and correct copy is attached as EXHIBIT 26.

**46.1.**    This "Second Mod Solicitation" letter is an exact duplicate of the First Mod Solicitation letter and is even dated the same—February 4, 2017. Debtor was only aware of letter because it was posted on Nationstar's website.

**46.2.**    This correspondence was addressed to Debtor's counsel at an address that he had updated in the court's files more than fifteen months earlier.

**47.**    Plaintiff called Nationstar on March 23, 2019 and spoke with Nationstar representatives regarding Nationstar's failure to file a notice of transfer of claim. Plaintiff told Nationstar that until and unless such notice was filed, he would continue to send payments to Citimortgage as required by the Chapter 11 Plan.

**47.1.**    The representative stated that Plaintiff would need to have his bankruptcy attorney call their bankruptcy department (or maybe their bankruptcy counsel) if he had concerns over the identity of the proper payee and payment address for his mortgage payments.

**48.**    Nationstar mailed Plaintiff correspondence dated April 14, 2017 regarding a trial period plan. A true and correct copy is attached as EXHIBIT 27.

**48.1.**    In this "Trial Offer" Nationstar stated:

> Based on an estimate of your home's value, you're approved to enter into a Trial Period Plan for a mortgage modification.

> To accept this option, within 14 days of the date of this letter you must call us at 866-316-2432 [5493412] to confirm your participation or make your first Trial Period payment.

> If this account has been discharged in a bankruptcy proceeding, be advised this communication is for Informational purposes only and not an attempt to collect a debt; however, Nationstar reserves the right to exercise the legal rights only against the property securing the original obligation.

10

Please send your trial period payments to:

Nationstar Mortgage
8950 Cypress Waters Boulevard
Coppell, TX 75019

**48.2.**   Nationstar subsequently enrolled Plaintiff into the Trial Period Plan without his permission

or authorization.

**49.**   Nationstar mailed Plaintiff correspondence dated April 14, 2107 regarding a supplemental

income disclosure. A true and correct copy is attached as EXHIBIT 28.

**49.1.**   In the Supplemental Income Disclosure for NY Properties Nationstar states:

RE: Loan Number: 631326303
Property Address: 2451 ELM GROVE RD WYLIE, TX 75098

Since your property is located in the State of New York, we are required to provide
you with supplemental information associated with these workout alternatives.

**49.2.**   The Property is not located in New York.

*First Foreclosure Attempt*

**50.**   On May 2, 2017 Nationstar generated a payoff statement. A true and correct copy is attached

as EXHIBIT 29.

**50.1.**   Nationstar sent the payoff statement to fax number 972-219-3156 which is not a fax number

used by or known to Plaintiff. The mailing address was listed as "FC Referral Team" at 2451 Elm

Grove Road, Wylie TX 75098. The statement falsely states the outstanding principal balance is

$113,195.77. The principal balance as of the statement date was approximately $84,373.23.

**51.**   When Plaintiff noticed the payoff statement posted to his online account, he inquired to

Nationstar, using the online portal, about it and requested documentation of the person who

authorized it. Durham replied stating:

Your account (loan no. xxxxxx6303) was referred to foreclosure on May 2, 2017. At
the time of referral, the account was due for the January 1, 2017 monthly payment.

> When an account is referred to foreclosure, a payoff quote is generated and sent to the subject mailing address.
> Your account is no different.

A true and correct copy of Durham's email is attached as EXHIBIT 30.

**51.1.**   Based on Plaintiff's experience, these statements are false. Plaintiff's loan has been referred to a foreclosure attorney twice by Nationstar. Plaintiff never had a payoff statement mailed to him as a result. Neither has Plaintiff received a payoff statement that he did not expressly request.

**51.2.**   On or about April 11, 2019 Nationstar filed for a temporary restraining order in federal district court.  Therein Nationstar complained of the fraudulent acts of FC Referral Services and others concerned the hijacking of legal title to mortgages served by Nationstar. One allegation specifically complains of a payoff statement sent to 972-219-3156—the same number to which the Plaintiff's payoff statement and the financial information therein was sent. Nationstar never gave notice to Plaintiff that his personally identifiable information had been breached. A true and correct copy is attached as EXHIBIT 79.

**52.**   Nationstar, by and through Lewis, mailed Plaintiff correspondence dated June 12, 2017 regarding a "Notice of foreclosure sale on Tuesday, July 4, 2017." A true and correct copy is attached as EXHIBIT 31.

**52.1.**   This letter ("First Notice of Sale") states:

> This letter and the accompanying copy of the Notice of Foreclosure Sale is being sent to you as a debtor on the indebtedness described in the enclosed notice. Default has occurred in the payment of the indebtedness. Our firm has been employed by Nationstar Mortgage, LLC, the noteholder and Mortgagee of Record, to represent it in collecting the indebtedness owed by you and secured by the referenced Deed of Trust. The maturity of the aforesaid Note has been accelerated and demand is hereby made for payment of the balance of all sums now due and owing on said Note.

> I am enclosing a copy of the Notice of Foreclosure Sale, which is being posted on the public notice board of the Collin County Courthouse and in accordance with the provisions of the Deed of Trust. You are informed that the public auction of the property described in the notice is scheduled for Tuesday, July 4, 2017, between the hours of 10:00 A.M. and 4:00 P.M. at the Collin County Courthouse.

> As of this date, $113,195.77 in principal, plus all unpaid accrued interest and late fees thereon, is due and owed.

The copy of the Notice of Foreclosure Sale attached to the letter states:

> Default and Request To Act. Default has occurred under the deed of trust, and the beneficiary has requested me, as Substitute Trustee, to conduct this public sale.

**52.2.** . The Note had not been accelerated at the time, because the purported acceleration was void.

The copy of the Notice of Foreclosure Sale attached to the letter was materially different that the one publicly posted. The principal balance, as of the date of the letter, was not $113,195.77, but approximately $79,000. The letter also misrepresents the mailing date—which was June 12, 2017—not June 9, 2012 as the postmark applied by Nationstar would indicate.

**53.** Nationstar filed a notice of foreclosure sale with the Collin County Clerk on June 12, 2017. A true and correct copy is attached as EXHIBIT 32.

**53.1.** The notice ("First Posted Notice of Sale") was also posted on a public notice board of the Collin County courthouse. The notice states:

> The sale is a non-judicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by the Deed of Trust executed by George D Wigington, Teresa L Wigington.

> Default has occurred under the deed of trust, and the beneficiary has requested me, as Substitute Trustee, to conduct this public sale.

> Notice is given that before the sale the beneficiary may appoint another person substitute trustee to conduct the sale.

> THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT INDENTIFIED [sic] IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

**53.2.** Garvin signed the notice as "Substitute Trustee" though he had not yet been appointed substitute trustee.

13

**53.3.**   Garvin signed the notice though he was not an "attorney or authorized agent" of Nationstar with power to appoint a substitute trustee.

**53.4.**   Garvin signed the notice though he had only been requested to post the notice of sale and not to "conduct the public sale."

**53.5.**   The section in all caps above was a material addition to the copy of the notice mailed to Plaintiff. The First Posted Notice of Sale was signed by David Garvin who was not an "attorney or authorized agent of the mortgagee or mortgage servicer" at the time he signed the document. David Garvin appointed himself substitute trustee. David Garvin was not validly appointed substitute trustee under the Deed of Trust until July 12, 2017.

**54.**   On June 28, 2017 a telephone customer service representative, Amy Parker ("Parker), of Nationstar told Plaintiff that the debt had been accelerated on May 02, 2017 and that on the same day the debt was referred to Robertson Anschutz Vetters for foreclosure. Parker falsely stated that the Notice of Default had been mailed on February 28, 2017 despite the fact that the tracking report in their system showed that it was mailed on or after March 1, 2017.

**55.**   Plaintiff never received written notice of acceleration from Nationstar of the purported May 02, 2017 acceleration of the debt, aside from the statement contained in the first two notices of foreclosure sale.

**56.**   On June 29, 2017, Plaintiff filed a petition and application for temporary restraining order in Dallas County district court.  A hearing on the TRO was held that day in the late afternoon. Judge Tillery directed Plaintiff to make additions to the proposed order and return it for his signature.

**57.**   The next afternoon Plaintiff returned to the courthouse with the modifications only to find that, not only was Judge Tillery gone for the week, but every judge was gone. There were no judges available to sign or rehear the application.

**58.**      Plaintiff also discovered new notices in the elevator lobbies stating that the courts were to be closed on Monday July 3, 2017 due to renovations.

**59.**      During a phone call on or about June 30, 2017, Garner informed Plaintiff that the July 4, 2017 foreclosure sale was cancelled because the foreclosure had been filed in the wrong county— Collin County.

**60.**      The Property is located entirely within Dallas County and a foreclosure sale of the property can only occur in Dallas County.

**61.**      No foreclosure sale of the Property occurred on July 4, 2017.

*Second Foreclosure Attempt*

**62.**      Nationstar, by and through Lewis, mailed Plaintiff correspondence dated July 10, 2017 regarding a "Notice of foreclosure sale on Tuesday, August 1, 2017." A true and correct copy is attached as EXHIBIT 33.

**62.1.**   This correspondence ("Second Notice of Sale") makes the same statements complained of above regarding the First Notice of Sale except that the sale was noticed to occur in Dallas County on August 1, 2017.

**62.2.**   In the Second Notice of Sale Nationstar makes several false claims. The Note had not been accelerated at the time, because the purported acceleration was void.  The copy of the Notice of Foreclosure Sale attached to the letter was materially different that the one publicly posted. The letter also misrepresents the mailing date—which was July 10, 2017—not July 6, 2017 as the postmark applied by Nationstar would indicate. The letter also misrepresents that it was sent by certified mail both expressly and as indicated by the markings on the envelope. The letter was not accepted by the U.S. Post Office as certified mail and no tracking of the document occurred.

**63.**      Nationstar filed a notice of foreclosure sale with the Dallas County Clerk on July 10, 2017. A true and correct copy is attached as EXHIBIT 35.

**63.1.**   The notice ("Second Posted Notice of Sale") was also posted on a public notice board of the Dallas County courthouse.   The notice makes the same false statements complained of above regarding the First Posted Notice of Sale except that the sale is noticed to occur in Dallas County on August 1, 2017.

**63.2.**   The section in all caps above was a material addition to the copy of the notice mailed to Plaintiff. The Second Posted Notice of Sale was signed by David Garvin who was not an "attorney or authorized agent of the mortgagee or mortgage servicer" at the time he signed the document. David Garvin was not appointed substitute trustee under the Deed of Trust until July 12, 2017. Again, David Garvin—with no direct or indirect authority to appoint a substitute trustee on behalf of Nationstar—appoints himself substitute trustee in the posted notice of foreclosure sale.

**64.**   Nationstar filed an Appointment of Substitute Trustee with the Dallas County Clerk on July 12, 2017. Therein, Lewis appoints Garvin, and others, as successor trustees under the Deed of Trust. A true and correct copy is attached as EXHIBIT 34.

**65.**   Plaintiff found the Second Notice of Sale in his mailbox on July 13, 2017. Plaintiff did not have to sign a receipt for certified mail for the Second Notice of Sale.

**66.**   After receiving the Second Notice of Sale, Plaintiff searched for, found, and downloaded the Second Posted Notice of Sale. According to the Dallas County Clerk's Foreclosure Notice webpage, the Second Notice of Sale was entered online on July 12, 2017.   The document contained a file stamp indicating it was filed on July 10, 2017.

**67.**   On July 19, 2017, Plaintiff attempted to verify the mailing of the Second Notice of Sale on the USPS website using the purported tracking identification on the notice, 9214 8901 4169 1833 4116 29.   The USPS Tracking results indicated that the post office had no history or data on the tracking number.

**68.**     Between July 19 and 21, 2017, Plaintiff had a discussion with Lewis via email regarding the

lack of proper notice of sale (21-day) and the fact that Plaintiff was current on his mortgage

obligations. A true and correct copy of the emails is attached as EXHIBIT 36.

To Lewis: 1:38 pm July 19, 2017

I am writing to request that you withdraw the foreclosure notice and sale that you
have scheduled for my property on August 1, 2017.

In addition to the foreclosure defects that I claimed in the lawsuit I filed, your notice
of foreclosure that you sent to me and my wife were not sent by certified
mail. The letters do contain something that appears to be a certified mail tracking
number, (and a large amount of postage), however, they were never presented to the
USPS as certified mail. The USPS shows nothing for the tracking numbers - no
presentment, no notice, no intermediate scans, no delivery scans.

These letters were delivered after July 11, the deadline, to our mailbox. We were not
asked to sign for them. If you have evidence that these were sent by certified mail (ie
round stamp on Form 3800 Certified Mail Receipt or on Form 3877 Firm Mailing
Book or Form 5630 Scan Acceptance Form) please provide it to me as soon as
possible. I plan to seek another temporary injunction tomorrow morning on this basis.
Your letter states that it was sent certified mail return receipt requested but the
evidence proves otherwise.

Also the postage marked on your letter is dated July 6, 2017 and the date of your
letter is July 10, 2017. How is that possible?

P.S. This is a really bad time for you and Nationstar to be pulling this. I am trying to
study for the bar exam next week and have to deal with this stuff. My wife is so
distraught that she missed work on Monday. I beg you to review Nationstar's records.

**We are current on our obligation for our house.** You have already posted in the
wrong county. You are trying to rush through foreclosure and have not sent the
proper notices. I know that, as an attorney, you reviewed my file before trying to
foreclose. I ask that you review it again, you missed a lot the first time or Nationstar
is withholding it from you.

I am not raising a crazy split-the-note or MERS defense. I am current and you have
not complied with the deed of trust and statutes in attempting to
foreclose. Those are my defenses

To Plaintiff: 2:29 pm July 19, 2017

Before addressing your contention that the NOS provided to you is defective**, I
would like to better understand your statement that your loan is "current".**

17

According to the account records that have been provided to us your loan appears to be more than six months past due. **If you are asserting that the payment history is not correct, please provide documentation that you have made all payments due under the terms of your note and loan agreement**. The documentation should include confirmation that payments that you believe were not properly posted to your account, if any, were received and negotiated by Nationstar.

To Lewis: 2:51 pm July 19, 2017

Thank you for your reply. As I stated, I am preparing to take the bar next Thursday. If I had a couple of extra hours to assemble the documentation you requested, I would use it to sleep or to study. **At this point, I just want to make sure that you and Nationstar are on notice that you are about to have a foreclosure sale on a deed of trust whose underlying obligation is current.** I don't have time to provide the documentation you request at this time.
I believe the NOS deficiency speaks for itself and repeat my request for you to withdraw the sale. I do appreciate your response and your time.

To Plaintiff 12:36 July 21, 2017

I have reviewed the matters raised in your e-mails in regard to the Notice of Sale. Additionally, I have talked to the USPS. According to the USPS the Certified Letter was delivered as if it were First Class mail, meaning the bar code was not read by the USPS scanners. However, we know that the letter was deposited in with the USPS which is the requirement of the property code because it was, in fact, delivered.

There are a number of Texas cases which have held that receipt of actual notice (as opposed to the constructive notice provided for in the property code) will support a foreclosure sale.

**That being said, it seems to me that the real issue here is that Nationstar's records show a substantial deficiency and you contend that the account is current.**

I know that you are busy studying for the bar exam, so we understand that you may not have time to provide a comprehensive audit trail until after the exam.
Unfortunately, we cannot pull the sale just based on your statement that the loan is current.

Accordingly, we are willing to make our recommendation to the client as to whether to pull the sale, based on a fairly brief explanation provided by you of the circumstances pursuant to which you believe the loan was brought current that is supported by a minimal amount of credible documentation (e.g. cancelled check(s); correspondence, etc). For clarity, in order to respect your time while you prepare for the bar exam, we are not asking for a complete reconciliation, just enough support

for your contention that will enable us to recommend to our client that the sale be pulled while the full reconciliation is finalized.

Emphasis added.

**68.1.**    In the discussion, Lewis explained that receipt of the notice by Plaintiff constituted actual notice and therefore sufficient to satisfy the requirements of Texas law.  Lewis neglected to respond to Plaintiff's complaint that the actual notice was received only 19 days prior to the scheduled foreclosure sale date.

**69.**    On July 24, 2017 Plaintiff filed an amended petition in the state court action.

**70.**    On July 26, 2017 a temporary restraining order was issued enjoining the foreclosure sale of the Property.

**71.**    No foreclosure sale of the Property occurred on August 1, 2017.

**72.**    A Rule 11 Agreement Regarding Temporary Injunction was entered on August 11, 2017 prohibiting any foreclosure activities during the pendency of the suit.

**73.**    A Scheduling Order was entered on September 29, 2017 setting a trial date of June 26, 2018.

**74.**    On November 1, 2017 Debtor filed his Notice of Plan Completion and §522(q) Statement by Individual Debtor ("Notice of Plan Completion") in his Chapter 11 Case [DOC 430 Case 11-41092]. Therein Debtor declared under penalty of perjury "I . . . have . . . tendered all payments to creditors required to be tendered by me under the provisions of the confirmed Chapter 11 plan in this case." A true and correct copy is attached as EXHIBIT 11.

**75.**    On November 1, 2017 Debtor filed his Post-Confirmation Report ("Post-Confirmation Report") [DOC 431 Case 11-41092].  A true and correct copy is attached as EXHIBIT 12.

**76.**    On November 3, 2017 the Court issued a Notice of Intent to Issue Order of Discharge For An Individual Debtor in a Chapter 11 Case ("Notice of Intent to Issue Discharge") [DOC 433 Case 11-41092]. A true and correct copy is attached as EXHIBIT 13.

19

**77.**     Nationstar's knowledge of these filings is also shown by the fact that it did not issue

mortgage statements in November 2017, December 2017, or January 2018.  Dates which coincide

with the period of time the case was reopened for discharge.

**78.**     On December 15, 2017 Nationstar served its first discovery requests on Debtor.

**79.**     The Court granted Debtor a discharge on December 17, 2017 [DOC 440 Case 11-41092]. A

true and correct copy is attached as EXHIBIT 14.

**80.**     On December 27, 2017—ten days after the discharge was granted—Nationstar first appeared

in the bankruptcy case by filing a Request for Service of Notices [DOC 441 Case 11-41092]. A true

and correct copy is attached as EXHIBIT 15.

**81.**     On January 25, 2018 Plaintiff Served Plaintiff's Response to Defendant's First Set of

Interrogatories ("Plaintiff's Response to Interrogatories"). A true and correct copy is attached as

EXHIBIT 53.

Plaintiff's responses include:

> **INTERROGATORY NO. 14:** If you contend that Defendant does not have
> authority to or cannot legally foreclose on the Property, generally state the factual
> bases for your allegation.
> RESPONSE: The debt that the mortgage secures is not in default. The debt secured
> by the mortgage was paid in full on October 20, 2017. The mortgage was
> extinguished when the debt secured by the mortgage was paid in full.

> **INTERROGATORY NO. 15:** Do you contend that Defendant is not legally entitled
> to collect any debt owed under the Loan? If so, describe all facts supporting your
> contention.
> RESPONSE: I have never seen an assignment of the note to the Defendant, so I
> cannot say whether Defendant was ever entitled to collect on the note. However,
> collection of the note was stayed upon the confirmation of Plaintiff's Chapter 11 plan
> which included treatment of the debt under the Note in Class 2 of the plan. After
> completion of all payments under the plan, which provided treatment for the debt,
> the note was discharged.

> **INTERROGATORY NO. 16:** For each of your individual responses to Defendant's
> First Requests for Admission (which you were served concurrently with the service
> of these Interrogatories) which is not an unqualified admission, describe all facts
> upon which you base your response to each individual Request for Admission.

**Request for Admission No. 2:**
Plaintiff has made late payments, but no payments are past due currently.

**Request for Admission No. 6:**
Plaintiff made payments in March 2017, April 2017, May 2017, June 2017, August 2017, September 2017, and October 2017. Final Payment was made on October 22, 2017.

**Request for Admission No. 7:**
Plaintiff has made late payment and thus was in default until payment was made. However, Plaintiff has never failed to make up for a late payment prior to Defendant's proper acceleration of the debt. (If Defendant is proper party to accelerate the debt, because Defendant has not show that it holds the note).

82.    On January 25, 2017 Plaintiff Served Plaintiffs to Defendant's First Request for Admissions

("Plaintiff's Response to Request for Admissions"). A true and correct copy is attached as EXHIBIT

54. Plaintiff's responses include:

> **Request for Admission No. 2: Admit** that Plaintiff failed to make one or more monthly payments for the principal and interest, as specified in the Note.
> RESPONSE: Denied that that Plaintiff has "failed to make one or monthly payments"; Admitted that Plaintiff has "failed to [timely] make one or monthly payments."

> **Request for Admission No. 6: Admit** that Plaintiff stopped making monthly payments on Your mortgage obligations.
> RESPONSE: Denied.

> **Request for Admission No. 7: Admit** that Plaintiff defaulted on the Loan as that term is defined in the Note.
> RESPONSE: Admitted that Plaintiff has been "in default" ("[did] not pay the full amount of each monthly payment on the date it [was] due") on one or more occasions; Denied that Plaintiff was "in default" when Defendant purported to accelerate the note, noticed the property for foreclosure, and attempted to sell the property.

83.    On May 4, 2017, Nationstar filed its Second Amended Motion for Summary Judgment.  A

true and correct copy is attached as EXHIBIT 83.

**83.1.**   In its motion, Nationstar falsely states:

> The note requires monthly payments from Plaintiff and his wife in the amount of $1,425.50.

Plaintiff's live petition does not dispute the fact that Plaintiff and his wife are in default.

In short, the applicable foreclosure laws were followed as Plaintiff was provided notice of his default and subsequent notice regarding foreclosure of the Property for Plaintiff's failure to cure that default.

Accordingly, Nationstar had a contractual right to foreclose on Plaintiff's home and did not violate § 392.301(a)(8) in its attempts to do so.

The evidence shows that Plaintiff did not make payment under the terms of the note and deed of trust.

**83.2.** Nationstar had not followed applicable foreclosure laws.

**84.** On May 5, 2018 Plaintiff and Durham conducted a phone conference. A true and correct

transcript is attached as EXHIBIT 59. A portion of the call is shown below:

| | |
|---|---|
| Durham: | If you want to settle you have to make a demand.  What do you want?  Do you want a repayment plan. |
| Plaintiff: | The loan is paid off.  It's been discharged. There's a court order . . . finding that all payments have been made. |
| Durham: | In . . In Bankruptcy Court? |
| Plaintiff: | Uh huh. |
| Durham: | Well, why didn't you allege that? |
| Plaintiff: | Well, . . . in my . . . initial petition, that wasn't the case yet. And . . . uhh, this whole, Nationbank . . Nationstar never filed a change of creditor claim in the bankruptcy. So that's why they stopped getting payments when Citimortgage stopped sending them to them. But under the bankruptcy plan, I had to send them to the address shown on the proof of claim. |
| Durham: | When . . . When was your discharge date? I mean that's the kind of stuff that is more important to share with me than some . . . case you think applies. Because we are not a law firm that handles the bankruptcy. |
| Plaintiff: | <u>The discharge was on December 17</u>. And Nationstar filed a request for notices on . . . 10 days later. |

| | |
|---|---|
| Durham: | <u>December 17, 2017?</u> |
| Plaintiff: | Uh huh. |
| Durham: | I'll double check with them to make sure that the, like you said, this loan is paid off. Uhmm. Now, do you mean paid … You said paid off? Do you mean paid off or . . . discharged? |
| Plaintiff: | Uhmm. Discharge is just liability on the debt. Uhmm . . . |
| Durham: | I'm trying to figure . . . |
| Plaintiff: | The debt was paid down to zero. |

. . .

| | |
|---|---|
| Durham: | So were these checks . . were these checks cashed that you wrote? |
| Plaintiff: | No. They were returned. |
| Durham: | So, . . . you haven't paid off the loan. |
| Plaintiff: | No. Uhmm. . .  The payments were deemed made, not tendered, when I put them in the mail. |
| Durham: | Deemed?  By whom? |
| Plaintiff: | By the bankruptcy plan |
| Durham: | OK. Are you ready . . . Are you ready to make that claim to the bankruptcy court? |
| Plaintiff: | I already did. I mean I signed under oath saying that I paid . . . made all the payments required under the plan. |
| Durham: | OK. And you made them to a party that you knew wasn't going to cash them. That you knew was not your mortgage servicer. |
| Plaintiff: | As required by the plan. |

. . .

| | |
|---|---|
| Durham: | That would be great. In fact, I'm going to have work. Yea. All right, discharged in December.  So, we are going to have to take a look. |

. . .

| | |
|---|---|
| Durham: | Will you please email me the bankruptcy info? I'm going to have |

to dive in there and look and see what is going on.

85.    Nationstar mailed a mortgage statement to Plaintiff dated June 19, 2018. A true and correct

copy is attached as EXHIBIT 64.

85.1.    This statement—unlike the each of the thirteen previous mortgage statements issued by

Nationstar—contained no notice declaring that it was not an attempt to collect a debt if the borrower

was in bankruptcy or the debt had been discharged in bankruptcy. Nationstar was attempting to

collect the debt as a personal liability of Plaintiff.

86.    Nationstar sent Plaintiff its Second Amended Response to Plaintiff's Request for

Admissions dated June 25, 2018. A true and correct copy is attached as EXHIBIT 55.

87.    In its response, Nationstar admits that it never bothered to meaningfully participate in

Debtor's prior bankruptcy:

> **REQUEST FOR ADMISSION NO. 46:** Admit that Nationstar Mortgage LLC's
> only filing in the Bankruptcy Case was a "REQUEST FOR SERVICE OF
> NOTICES," Document 441 entered on December 27, 2017.
> RESPONSE: Admit.

> **REQUEST FOR ADMISSION NO. 47:** Admit that Nationstar Mortgage LLC's
> first and only filing in the Bankruptcy Case occurred ten days after the "Order of
> Discharge," Document 440, was entered on December 17, 2017.
> RESPONSE: Admit.

88.    In its response, Nationstar admits that Plaintiff never treated Nationstar as the holder of

Claim #28:

> **REQUEST FOR ADMISSION NO. 37:** Admit that Nationstar Mortgage LLC
> never received a mortgage payment directly from Plaintiff.
> RESPONSE: Admit.

> **REQUEST FOR ADMISSION NO. 38:** Admit that the only mortgage payments
> received by Nationstar Mortgage LLC from Plaintiff were forwarded or transferred
> from Citimortgage.
> RESPONSE: Admit.

**89.**     Nationstar's attitude with respect to this matter is displayed in their progressive responses

to Plaintiff's Request for Admission No. 24.

> **REQUEST FOR ADMISSION NO. 24:** Admit that Nationstar Mortgage LLC has
> charged legal fees, property inspections, and trustee fees to Plaintiff or Plaintiff's
> account.
>
> **INITIAL RESPONSE:** Defendant objects to the request as it is vague and
> ambiguous. Defendant further objects because the request, as written, calls for a legal
> conclusion. In addition, Defendant objects because the request is overbroad as it
> encompasses time periods, activities, locations, and activities not relevant to this
> action's subject matter. And, Defendant objects because the request seeks
> information not relevant to the subject matter of the pending action. Subject to these
> objections, Defendants responds as follows:
>
> Denied as the Detail Transaction History (produced at Nationstar 0056-0060) does
> not show line item charges for "legal fees," "property inspections," or "trustee fees."
>
> **AMENDED RESPONSE:** Subject to and without waiving the stated objections,
> Defendant admits the Mortgage Loan Statement dated November 1, 2017 shows
> transactions for (1) Property Inspections and (2) Legal Fees. The request is denied as
> to "trustee fees."
>
> **SECOND AMENDED RESPONSE**: Denied.

Emphasis added.

**90.**     Plaintiff's original document production meeting was set for January 26, 2018 in Plaintiff's

Response to Defendant's Request for Production. That meeting was later cancelled by Durham

because he was unable to meet that day. On July 5, 2018 the rescheduled document production

meeting was held. Plaintiff produced 862 pages of electronic documents in addition to actual checks,

returned envelopes, and check carbons sent to Citimortgage. Plaintiff also produced actual mail he

had received as a result of the three foreclosure sale postings. Nationstar copied these documents

filling another 95 pages of production documents. This production also included the bankruptcy

docket, discharge order, notice of intent to issue discharge, notice of plan completion, post-

confirmation report, ballots, confirmation order, plan, and Claim 28.

**91.**     Nationstar never sent Plaintiff another mortgage statement after the document production

meeting.

**92.**     Plaintiff filed a notice of nonsuit in the state court action on July 23, 2018.

**93.**     Nationstar mailed Plaintiff a CFPB 45 Day Solicitation Letter dated August 1, 2018. A true

and correct copy of these payments is attached as EXHIBIT 71.

**93.1.**   In this letter Nationstar states:

> Available Loss Mitigation Options*:
> If you need help, the following options may be possible (most are subject to lender
> approval):
> - Refinance the loan with us or another lender;
> - Modify the loan terms with us;
> - Payment forbearance temporarily gives you more time to pay your monthly
>   payment;
> - Repayment plans that allow missed payments to be made up over time; or
> - If you are not able to continue paying your mortgage, your best option may
>   be to find more affordable housing. You may be able to either surrender your
>   home through a Deed in Lieu or sell your home and use the proceeds to pay
>   off the loan, even if the proceeds are not enough to pay the loan in full (short
>   sale).

**93.2.**   This CFPB 45 Day Solicitation Letter contained no bankruptcy notice or statement that it

was not an attempt to collect a debt.

**94.**     Nationstar sent an email to Plaintiff on August 3, 2018. A true and correct copy is attached

as EXHIBIT 37.

**94.1.**   In this email Nationstar states:

> We know keeping up with a mortgage can be challenging.  Please call us to discuss
> options that may make your home loan more manageable. Together, we'll seek a
> home loan solution that meets your needs.

> Mr. Cooper is a debt collector. This is an attempt to collect a debt and any
> information obtained will be used for that purpose. However, if you are currently in
> bankruptcy or have received a discharge in bankruptcy, this communication is not an
> attempt to collect a debt from you personally to the extent that it is included in your
> bankruptcy or has been discharged, but is provided for informational purposes only.

**94.2.**   Between August 3 and September 9, 2019, Nationstar sent virtually this exact email an

additional thirteen times to Plaintiff.

**95.**   Nationstar mailed to Plaintiff a Pre-Approved Modification Offer on August 13, 2018. A

true and correct copy is attached as EXHIBIT 72.

**95.1.**   In this offer Nationstar states:

> We've found a way to provide you with payment relief. Based on a careful review
> of your account, we are offering you an opportunity to enter into a Trial Period Plan
> for a Flex Modification.
>
> What do I need to do?
> Step 1: To Stop the Foreclosure Process (Suspension of Foreclosure)
>
> [I]f you contact us by 8/27/2018 to notify us of your intent to accept the Flex
> Modification Trial Period Plan offer . . . we will place the foreclosure on hold from
> the time you contact us. The foreclosure process will also be suspended if you make
> your first Trial Period Plan payment by 8/27/2018 which is earlier
> than the scheduled due date described in the table above.
>
> Step 2: To Accept This Offer
> You must make your first Trial Period Plan payment by the first payment due date
> designated above.
>
> Your current loan documents remain in effect; however, you may make the Trial
> Period Plan payment instead of the payment required under the loan documents.
> You agree that all terms and provisions of your current mortgage note and mortgage
> security instrument remain in full force
>
> If you previously received a Chapter 7 bankruptcy discharge, but did not reaffirm the
> mortgage debt under applicable law:
> - You agree that you were discharged in a Chapter 7 bankruptcy proceeding
>   subsequent to the execution of the Loan Documents. Based on this
>   representation, we agree that you will not have personal liability on the debt
>   pursuant to this Trial Period Plan.

**95.2.**   This offer contained no bankruptcy notice or statement that it was not an attempt to collect

a debt.

*Third Foreclosure Attempt*

**96.**    Nationstar generated a notice pursuant to the fair debt collection practices act dated August

21, 2018.  A true and correct copy is attached as EXHIBIT 38.

**96.1.**   In this validation notice Nationstar, by and through RAS Crane, stated:

> Our law firm is attempting to collect a debt that is owed to NATIONSTAR
> MORTGAGE LLC D/B/A MR. COOPER.  This is an attempt to collect a debt and
> any information obtained will be used for that purpose. The amount of the debt:
> $132,500.91 as of [t]he date of this letter."

**96.2.**   The amount of the debt was not $132,500.91 as of the date of the correspondence.

**97.**    Nationstar filed an Appointment of Substitute Trustee on August 21, 2018 in the Dallas

County Clerk's office.  A true and correct copy is attached as EXHIBIT 82.

**98.**    Nationstar, by and through RAS Crane, sent correspondence regarding notice of a trustee's

sale dated September 5, 2018. A true and correct copy is attached as EXHIBIT 39.

**98.1.**   The correspondence included a Notice of Substitute Trustee's Sale ("Third Notice of Sale")

and a Notice of Acceleration ("Notice of Acceleration").

**99.**    The Third Notice of Sale stated that the Property would be sold at auction on October 2,

2018 because "[d]efault has occurred in the payment of the Note and in the performance of the

obligations of the Deed of Trust, the same is now wholly due."

**99.1.**   No valid acceleration ever occurred and any valid acceleration of the debt had been

abandoned.

**100.**    The Notice of Acceleration states:

> Please be advised that the undersigned law firm represents the Mortgage Servicer
> with respect to the above-referenced debt. Any individual to whom this notice is sent
> who is NOT obligated for the debt is given the following notice as a courtesy because
> your interest in the Property may be affected.

> This letter constitutes formal notice to you of your default under the terms of the
> Note evidencing the Loan and the deed of trust (the "Security Instrument") securing
> the loan.

According to and relying on the information provided to this firm by the Mortgage Servicer, you have failed to bring the loan current despite the notice that your unpaid loan would be accelerated if the default was not timely cured.

Because of the non-payment of all past due loan installments and other amounts legally due, the Mortgage Servicer has ACCELERATED the maturity of the debt.

**100.1.** No valid acceleration of the debt had occurred and any valid acceleration of the debt had been abandoned.

**101.** Nationstar did not cure the defective 29-day notice of default simply by waiting until April 1, 2017 to give Plaintiff 30 days from the day the notice was actually mailed. Nor did the invalid notice become valid even a year later. An entirely new 30-day notice of default, or notice of intent to accelerate, must be issued. In addition, no default existed at the time of the initial default notice, and if it had, the multiple mortgage statements afterwards demanding payment of solely the arrears rescinded any acceleration.

**102.** Nationstar filed a notice of foreclosure sale with the Dallas County Clerk on September 6, 2018. A true and correct copy is attached as EXHIBIT 40.

**102.1.** The notice ("Third Posted Notice of Sale") was also posted on a public notice board of the Dallas County courthouse. The notice states that the Property would be sold at auction on October 2, 2018 because "[d]efault has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust, the same is now wholly due."

**102.2.** No valid acceleration of the debt had occurred and any valid acceleration of the debt had been abandoned.

**102.3.** The Third Posted Notice of Sale was signed by Shelley Ortolani who had earlier been appointed substitute trustee in another document. This eliminated the need for her to attempt to self-appoint herself as David Garvin had attempted to do in the first two foreclosure attempts.

**103.**   Nationstar posted Debtor's home online at auction.com stating that it was to be sold at foreclosure auction. The webpage had been viewed 661 times as of September 25, 2018.  The webpage showed the following:

> Active Foreclosure Status
> Status:              Default
> Doc Type:         Notice Of Default
> Unpaid:            $123,816
> Current Owner    Wigington George / Wigington

A true and correct copy of the webpage printout is attached as EXHIBIT 76.

**103.1.**  The unpaid balance was not $123,816.

**104.**   *Second Bankruptcy Case*

**105.**   On October 2, 2018, Debtor filed a Chapter 13 bankruptcy petition [DOC 1 Case 18-42230]. The only reason Debtor filed this bankruptcy was to prevent the foreclosure sale of the Debtor's home later that day.

**106.**   Debtor listed two debts on his bankruptcy schedule, listing both as disputed. Aside from Nationstar's claim on his home, Debtor listed one medical debt of his wife to Synerprise Consulting in the amount of $293.00.  Debtor had previously disputed the medical debt and even sent in an offer in compromise. Synerprise never filed a proof of claim.

**107.**   Nationstar filed a proof of claim ("Claim #4") in the amount of $134,203.89 for money loaned on November 7, 2018 [Claim #4 Case 18-42230]. A true and correct copy is attached as EXHIBIT 6.

**107.1.**  The claim states that there is a "Principal balance:" of $113,195.77, "Interest due:" of $10,407.29, "Fees, costs due" of $3,443.02, and "Escrow deficiency for funds advanced:" of $7.157.81.  The claim states that "The claim is secured by a lien on the property."

**108.**   Nationstar mailed Plaintiff a CFPB 45 Day Solicitation Letter dated November 9, 2018. A true and correct copy of these payments is attached as EXHIBIT 73.

**108.1.** In this letter Nationstar states:

> Available Loss Mitigation Options*:
> If you need help, the following options may be possible (most are subject to lender approval):
> - Refinance the loan with us or another lender;
> - Modify the loan terms with us;
> - Payment forbearance temporarily gives you more time to pay your monthly payment;
> - Repayment plans that allow missed payments to be made up over time; or
> - If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. You may be able to either surrender your home through a Deed in Lieu or sell your home and use the proceeds to pay off the loan, even if the proceeds are not enough to pay the loan in full (short sale).

**108.2.** Unlike the CFPB 45 Day Solicitation Letter dated August 1, 2018, this CFPB 45 Day Solicitation Letter did contain a bankruptcy notice and statement that it was not an attempt to collect a debt.

> Please be advised this communication is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code. If this account has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and not an attempt to collect a debt against you; however, the servicer/lender reserves the right to exercise the legal rights only against the property securing the loan obligation, including the right to foreclose its lien under appropriate circumstances. Nothing in this communication shall be construed as an attempt to collect against the borrower personally or an attempt to revive personal liability.

**108.3.** The bankruptcy notice was likely included in this version of the solicitation letter because it was set after Debtor filed his second bankruptcy.

**109.** Select Portfolio mailed a Notice of Servicing Transfer to Plaintiff dated September 26, 2019 which states, "You are hereby notified that the servicing of your mortgage account, that is, the right to collect payments from you, is being assigned, sold, or transferred from Mr. Cooper to Select Portfolio Servicing, Inc., effective 10/01/2019. A true and correct copy is attached as EXHIBIT 43.

**109.1.** The notice states:

You are hereby notified that the servicing of your mortgage account, that is, the right to collect payments from you, is being assigned sold, or transferred from Mr. Cooper to Select Portfolio Servicing, Inc., effective 10/01/2019.

**110.**   Select Portfolio generated a mortgage statement dated October 14, 2019. A true and correct copy is attached as EXHIBIT 51.

**111.**   Select Portfolio sent correspondence to Plaintiff dated October 15, 2019. A true and correct copy is attached as EXHIBIT 46.

**111.1.**  The October 15, 2109 correspondence also stated:

If you have not already done so, please advise your insurance agent or carrier to update the mortgagee clause as listed above and fax the policy documents to 866-801-8177.

**111.2.**  On information and belief, Select Portfolio sent notice to Plaintiff's homeowner's policy provider requesting they make changes to the standard mortgage clause and the policy provider changed the clause at Select Portfolio's direction without Plaintiff's authorization, knowledge or permission.

**111.3.**  The standard mortgage clause in Plaintiff's policy has been modified to reflect the language Select Portfolio requested in the correspondence, and neither Plaintiff nor his wife made a request to do so.

**112.**   Select Portfolio filed a Notice of Transfer of Claim for Claim #4 on October 23, 2019 [DOC 41 Case 18-42230]. A true and correct copy is attached as EXHIBIT 18.

**113.**   On November 5, 2019 Plaintiff and Burks had a conference prior to the hearing on Nationstar's Motion for a More Definite Statement. Plaintiff requested a copy of the assignment of the Deed of Trust. Burks agreed to provide a copy to Plaintiff.

**114.**   Later that day, Nationstar assigned the Deed of Trust to Select Portfolio Servicing. A true and correct copy is attached as EXHIBIT 17.

**115.**   The assignment was recorded with the Dallas County Clerk on November 6, 2019.

**116.**   Select Portfolio mailed Plaintiff a mortgage statement dated November 15, 2019. A true and correct copy is attached as EXHIBIT 52.

**117.**   Select Portfolio mailed a payoff statement dated December 2, 2019 to Plaintiff calculating interest to December 19, 2019. A true and correct copy is attached as EXHIBIT 77.

**118.**   Select Portfolio mailed Plaintiff a mortgage statement dated December 13, 2019. A true and correct copy is attached as EXHIBIT 85.

*Nationstar and Citimortgage Mortgage Statements*

**119.**   Citimortgage issued mortgage statements in April, May, and June of 2011.  A true a correct copy of each is attached as EXHIBIT 65.

**120.**   Citimortgage issued mortgage statements in January and February 2014. A true a correct copy of each is attached as EXHIBIT 66.

**121.**   Nationstar issued no mortgage statements in the first five months after the Deed of Trust was assigned to it, August 2017 to January 2018.

**122.**   Nationstar began issuing mortgage statements in February 2018 and continued to do so until it received notice of the bankruptcy filings associated with completion of the Chapter 11 Plan and Debtor's discharge (February 2018 to October 2018). A true and correct copy of each of these nine mortgage statements is attached as EXHIBIT 62.

**123.**   Nationstar did not issue mortgage statements during the period of time in which the bankruptcy case, 11-41092, was reopened for Debtor's discharge (November 2018 to January 2019).

**124.**   Nationstar issued five post-discharge mortgage statements (February 2019 to June 2019). A true and correct copy of the February to May 2019 statements are attached as EXHIBIT 63. A true and correct copy of the June 2019 statements is attached as EXHIBIT 64.

**125.**   Nationstar never issued any mortgage statements after Plaintiff produced the returned payments (checks, check carbons, and envelopes with cancelled postage) to Durham on July 5, 2018.

*Notice/Knowledge of First Bankruptcy Case*

**126.**   Nationstar knew of Plaintiff's first bankruptcy case even before they were assigned the debt.

**127.**   The first contact from Nationstar, the notice of service transfer, was dated August 29, 2017—over two weeks before the actual transfer date. The notice acknowledged a pending bankruptcy and specified that it was collecting "voluntary payments." Paragraph 43 and EXHIBIT 19 are hereby incorporated herein.

**128.**   The second contact, just two days later, was a notice of bankruptcy dated August 31, 2017 in which Nationstar referenced Plaintiff's active bankruptcy case number, "Case Number: 1141092" Paragraph 44 and EXHIBIT 20 are hereby incorporated herein.

**129.**   The third contact from Nationstar occurred over five months later in Nationstar's First Mod Solicitation 745 letter dated February 4, 2017. Nationstar directed this correspondence to Plaintiff's bankruptcy attorney in his first case. Therein, Nationstar again acknowledged that Plaintiff was "currently in an active bankruptcy proceeding" Paragraph 50 and EXHIBIT 21 are hereby incorporated herein.

*Damages*

**130.**   Economic Damages. Debtor has spent vast amounts of time to counter the violations. Debtor has also sustained costs for filing fees, notary fees, parking fees, transcript costs, document fees, and mileage expenses. Debtor has been forced to miss or forego work associated with his new solo attorney practice not only due to the time required to counter the violations, but also due to lost time related to his inability to sleep, physical manifestations, and mental anguish caused by the violations. Debtor has made plan payments exceeding $9,500 which have been paid out to Nationstar and Select Portfolio. Debtor purchased and installed no trespassing signs in an attempt to prevent trespassing.

**131.**   <u>Non-Economic Damages.</u> The mental anguish experienced by Debtor has manifested itself physically: (1) Causing illness or exacerbating illness due to stress (the major episode lasting almost a month), (2) Causing nausea to the extent causing Debtor to gag repeatedly, (3) Triggering episodes (a dozen or more) in which a portion of Debtor's tongue, lip, hand, foot swell extremely for up to 24 hours causing pain and discomfort and sometimes breathing difficulties, and (4) Causing headaches not associated with alcohol consumption or dehydration (episode lasted four to six weeks with five to six headache days a week prompting debtor to carry advil in his car).

**132.**   <u>Mental Anguish.</u> Debtor has suffered a high degree of mental pain and distress due to the wrongful violations, including: (1) Humiliation and embarrassment due to the world being told, yet again, that Debtor was unable to pay his debts (false claims of default noticed to two counties); (2) Despair and feelings of hopelessness and uselessness due to his inability to stops the repeated violations; (3) Fatigue and tiredness caused by his inability to sleep at times because of anxiety due to the violations or his attempts to stop the violations; (4) Marital problems due to Debtor's wife's sensitivity to these issues including her anger towards Debtor for his refusal to just give in and pay, (5) Intrusion into his seclusion. Debtor has suffered loss of drive and ambition sometimes to the degree that just getting out of bed sometimes seems impossible. Debtor has suffered loss of enjoyment of life and lost interest in activities he previously enjoyed. Debtor has also suffered periods of excessive sleepiness causing him to sleep up to eighteen hours per day. Debtor also suffered from a lack of ability to concentrate due to racing thoughts related to the foreclosure attempts; these interrupted his days and kept him awake many, many nights. Debtor was also burdened by the stress of having to ensure that he received the mail each day for several weeks after each foreclosure postings to prevent adverse reactions from Debtor's wife who—without fail— became observably upset and shaken each time she saw a one of the dozens of pieces of correspondence referencing a pending foreclosure sale. Each sales notice also brought out short sale

buyers and foreclosure sale previewers trespassing on the Property. The combined effect of these factors greatly impacted the Debtor severely disrupting his daily routine. The intensity of these episodes varied, but always peaked at times of significant events—notice of foreclosure sales, foreclosure sale dates, court hearing dates. Debtor chose his residence because it offered seclusion. Nationstar has destroyed the peaceful enjoyment of Debtor's home for over two years.

## VII. IMPUTATION OF LIABILITY, KNOWLEDGE, INTENT, AND AWARENESS

### A.    <u>ACTS OF DEFENDANTS</u>

**133.**    When it is alleged that a Defendant did any act, it is meant that the Defendant performed or participated in such act or thing, or that a vice principal, agent, or employee of the Defendant performed or participated in the act or thing.

**134.**    When it is alleged that an individual did any act, it is meant that the person performed or participated in such act or thing as a vice principal, agent, or employee of a Defendant and that such acts or participation was the scope and authority of the vice principal, agent, or employee and was performed or participated in while acting within such scope and authority.

**135.**    The following individuals were agents (such term to include sub-agents of any level) of Nationstar at the time they performed or participated in the acts complained of herein:

      (1)      Chastity Wilson ("Wilson"), Assistant Secretary of Nationstar;
      (2)      Amy Parker ("Parker"), phone representative of Nationstar;
      (3)      Fay Janati, Senior Assistant Secretary of Litigation Support and Resolution Analyst;
      (4)      Shauna Caine, Vice President of Nationstar;
      (5)      David Garvin ("Garvin");
      (6)      Shelley Ortolani ("Ortolani");
      (7)      McGuire Woods LLP;
      (8)      Matthew Durham ("Durham"), attorney with McGuire Woods LLP;
      (9)      Robertson Anschutz Vetters ("RAV");
      (10)    Jeffry B. Lewis ("Lewis"), attorney with RAV;
      (11)    RAS Crane LLC ("RAS Crane");
      (12)    Kim Moses Linden ("Linden"), attorney with RAS Crane;
      (13)    Lauren W. Ojha ("Ojha"), attorney with RAS Crane;
      (14)    William Attmore ("Attmore"); attorney with RAS Crane;

(15)    Shapiro Schwartz, LLP ("Shapiro Schwartz");

(16)    H. Gray Burks, IV ("Burks"), attorney with Shapiro Schwartz;

(17)    Grant M. Tabor ("Tabor"), attorney with Shapiro Schwartz;

(18)    Citimortgage, predecessor-in-interest to Nationstar with regard to Claim #28 subsequent to the transfer; and

(19)    the owner of Auction.com.

## B.    DIRECT LIABILITY FOR ACTS OF VICE PRINCIPALS

**136.**    Defendants are directly liable for damages, including punitive damages, for the acts of its vice principals, including (1) its corporate officers, (2) any person who has authority to employ, direct, and discharge its other employees, (3) any person who performs its nondelegable or absolute duties, and (4) any person responsible for management of the corporation or its departments and divisions.

**137.**    At all times material to this petition, the acts complained of herein were performed or participated in by a person who was a current vice principal of the Defendants.

## C.    VICARIOUS LIABILITY

**138.**    Defendants are liable under the doctrine of vicarious liability for the acts of its agents and employees that were within the scope and authority of the agent or employee and that were performed or participated in while acting within such scope and authority.

**139.**    At all times material to this petition, the acts complained of herein were performed or participated in by employees and agents of the Defendants.  Those acts fell within the course and scope of their employment or agency with the Defendants.  Those acts were performed or participated in while the employees and agents of the Defendant were acting within the course and scope of their employment or agency with the Defendants.

## D.    DEFENDANTS' LIABILITY FOR PUNITIVE DAMAGES FOR ACTS OF ITS EMPLOYEES AND AGENTS

**140.**    Defendants are liable for punitive damages under the doctrine of vicarious liability for the acts (1) of an agent or employee who was unfit and with respect to whom Defendant acted with

gross negligence or malice in employing or retaining, (2) of an employee or agent employed by the Defendant in a managerial capacity performed or participate in while acting in the scope of that employment, and (3) which the Defendant or Defendant's manager authorized, ratified, or approved.

**141.** At all times material to this petition, the acts complained of herein were performed or participated in by (1) an agent or employee who was unfit and with respect to whom Defendant acted with gross negligence or malice in employing or retaining, (2) of an employee or agent employed by the Defendant in a managerial capacity performed or participate in while acting in the scope of that employment.

**142.** At all times material to this petition, the acts complained of herein were authorized, ratified, or approved by Defendants or one of their managers.

### E.   STATUTORY LIABILITY

**143.** Defendants are liable for all damages provided by statute, including actual damages, statutory damages, multiplied damages, punitive damages and mental anguish whether direct, vicarious, or otherwise imputed to Defendants.

### F.   KNOWLEDGE, INTENT, AND AWARENESS

**144.** The knowledge, intent, or awareness of a defendant's agent, employee, or vice principal, whether specifically alleged herein, is imputed to that Defendant.

**145.** The knowledge, intent, or awareness a defendant, whether specifically alleged herein, is imputed to its agents, employees, or vice principals performing the acts complained of herein. The knowledge, intent, or awareness imputed was either (1) necessary to perform the agent's, employee's, or vice principal's assigned duties, or was intentionally blinded to the knowledge, intent, or awareness by the defendant.

### G.   RELATIONSHIP BETWEEN PARTIES

38

**146.**    Nationstar is, or in the alternative purports to be, successor in interest to Citimortgage relative to Plaintiff's mortgage debt by way of assignment of the Deed of Trust and transfer of the Note.

**147.**    Select Portfolio is, or in the alternative purports to be, successor in interest to Nationstar relative to Plaintiff's mortgage debt by way of assignment of the Deed of Trust and transfer of the Note.

## H.    CONSTRUCTION OF PLEADING

**148.**    All exhibits attached to this pleading are hereby incorporated herein for all intents and purpose as if expressly set out herein.

**149.**    Segregation within this document into different sections and causes of action is for convenience only. This document is to be construed as a whole and paragraphs needed to support a cause of action, denial, or affirmative defense that are not expressly incorporated into that cause of action shall still be construed to support the cause of action, denial, or affirmative defense.  Specific incorporations are made herein for convenience, but this does not eliminate the requirement to construe this document as a whole.

**150.**    Reference to, or incorporation of, a paragraph includes its sub-paragraphs.

## VIII. CLAIMS ALLOWANCE PROCESS

**151.**    The proponent of Claim #4 has the burden of proof for establishing Debtor's liability under the asserted claim.  The filed proof of claim falls short of the standards set for filing a proof of claim and no presumption of the validity and amount claims is warranted.

**152.**    Debtor requests the Court deny Claim #4 the presumption of validity.

**153.**    Debtor requests the Court require Claimant to fully prove each element of any cause of action against Debtor.

### A.    Procedural Issue 1 - Claim #4 Does Not Have a Presumption of Validity

39

**154.**    While a proof of claim executed and filed in accordance with the bankruptcy rules constitutes prima facie evidence of the validity and amount of the claim, Claim #4 was neither executed nor filed in material compliance with the bankruptcy rules and the presumption never arises.

**155.**    Even if the presumption did arise, Plaintiff has met his burden of establishing a colorable challenge to the proof of claim overcoming the rebuttable presumption and the burden of proof shifts back to the SPS.

**156.**    Claim #4 is materially deficient in many respects, including:

(1)    the proof of claim form is incomplete,

(2)    the proof of claim form signatory's verification is deficient,

(3)    the supporting documentation is incomplete,

(4)    the lack of evidence that security interest is perfected,

(5)    the indorsement on note lacks evidence of signatory's authority to execute the document on behalf of the holder,

(6)    the evidence on the face of the Note that the indorsement is inauthentic,

(7)    the evidence in the Court's record that the indorsement was executed after the holder of the Note ceased to exist,

(8)    the extensive, and unrequired, redaction of the documentation attached to the proof of claim,

(9)    the lack of evidence that the Note was transferred for enforcement of rights, and

(10)    the lack of evidence that Select Portfolio holds the Note.

**157.**    The proof of claim form is incomplete.  Although Creditor claims to have a secured claim equal to its total claim, Creditor fails to list the "Value of Property."

**158.**    The verification of the proof of claims signatory, Ojha, is deficient.

**158.1.**  In signing Claim #4, Ojha declared—under penalty—that "I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct."

**158.2.**  However, the documents attached to the proof of claim contradict Ojha's declaration.  The evidence suggests that Breland—not Ojha—confirmed that the copy of the note attached to the proof of claim was a true and correct copy of the original note but did not do so under penalty of perjury.

**158.3.** There is no reason to include Breland's unverified "confirmation" of the note unless Ojha was depending on Breland's "examination of the information" and "reasonable belief that the [attached copy of the note] was true and correct" instead of her own examination and belief.

**158.4.** Whereas Claimant failed to provide a sponsor of the attached copy of the note willing or able to verify that it is a true and correct copy of the original note, the court should not presume its authenticity or validity.

**159.** Claimant failed to provide the supporting documents required by Rule 3001(c)(1).

**159.1.** The claim lists "Fees, costs due:" of $3,443.02 on its Mortgage Proof of Claim Attachment. Creditor's itemized statement describes these fees and costs as "Prop Insp," "FC Fee," "Publication," "Certified Mail," "Recrd SubTrste," "Title Examintn," and "Filing cost," but provides no documents or invoices to show that any work was actually performed or any that any invoice was actually paid.

**159.2.** The claim lists "Escrow Deficiency for funds advanced:" of $7,157.81 on its Mortgage Proof of Claim Attachment. Claimant's *Escrow Account Transactions Prior to Bankruptcy Filing* describes these advances as "Escrow Advance – Insurance," "Hazard Insurance Disbursed," "Escrow Advance – Tax," "County Tax Disbursed," and "School Tax Disbursed," but provides no documents or invoices to show that any taxes or insurance was due, that any invoice was paid, or that Claimant was authorized to pay any such invoice on behalf of Debtor.

**159.3.** Ojha admits that Claim #4 is incomplete in a note at the bottom of the proof of claim form which states, "Creditor has filed the proof of claim with all supporting documentation available at this time. Creditor is actively working to collect additional supporting documentation and will file and amended proof of claim once the additional documents are obtained."

**159.4.** Claimant has never produced the additional documentation. Claimant has failed to produce unredacted copies of the claim attachments to Debtor after initially agreeing to do so.

**160.**   Claimant, because of excessive redaction of possible filing evidence, failed to provide evidence that its purported security interest has been perfected by properly recording the deed of trust in the property records of the county in which the property is located as required by Rule 3001(d).

**160.1.**   The deed of trust attached to the proof of claim, as redacted, includes no evidence that the document was properly recorded in the Dallas County Clerk's office.

**160.2.**   The deed of trust attached to the proof of claim contains an incomplete property description because a page of the deed of trust was not included.

**161.**   There evidence available on the face of the Note provides no indication that the signatory had authority to execute the indorsement on behalf of the holder and there is evidence that the indorsement on note is inauthentic.

**161.1.**   The copy of the note attached to Claim #4 includes one indorsement, and one indorsement only, as shown below.



**161.2.**   The purported indorsement is signed, apparently, by one Margaret A. Bezy ("Bezy"); but there is no evidence that she was purporting to act on behalf of the original payee on the note, ABN AMRO, as its agent, officer, or principle.

**161.3.**   The indorsement also lacks evidence that Bezy had authority to act on behalf of the ABN AMRO.

42

**161.4.** Without a valid indorsement on behalf of the ABN AMRO, the note is payable only to ABN AMRO or to Citimortgage, its successor by merger, and is not negotiable by transfer.

**161.5.** In Debtor's prior bankruptcy case, Case No. 11-41092 in this court, Nationstar's purported predecessor-in-interest, Citimortgage, filed a proof of claim based on this same note.   However, Citimortgage' proof of claim ("Claim #28") filed on November 30, 2011 included a copy of the Note that did not contain an indorsement.

**161.6.** However—just as Claimant is now required to do—Citimortgage was required to demonstrate that it was entitled to enforce the note originally payable to ABN AMRO.

**161.7.** Citimortgage satisfied this requirement by attaching evidence that ABN AMRO had merged with Citimortgage—four years prior to the filing of Claim #28 in the first bankruptcy case—on August 21, 2007. Citimortgage, as the surviving constituent corporation, was entitled to enforce the note—without indorsement by ABN AMRO—in its own name.

**161.8.** Claim #28 was executed and filed in accordance with the bankruptcy rules and constituted prima facie evidence of the validity and amount of the claim, including the condition of the note as it existed on the date the claim was filed, November 30, 2011.

**161.9.** This directly conflicts with Claimants assertion now, that the Note was validly endorsed by Bezy, acting for ABN AMRO. The latest Bezy could have endorsed the Note on behalf of ABN AMRO was August 21, 2007. Yet in 2011, the Note presented contained no such endorsement.

**162.** Ojha's signature on Claim #4 serves as an "acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt."

**163.** Due to the numerous material deficiencies evident on the face of Claim #4, the court should find that Claim #4 is not prima facie evidence of the claim and require that Claimant fully prove its claim with no benefit of presumption of validity.

### B.   Procedural Issue 2 - Requirement for the original note

**164.**   Debtor objects to the use of a copy or a duplicate of the indorsed Note and demands that the original Note be produced to prove its content.

**165.**   "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Fed. R. Evid. 1002.

**166.**   A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate. Fed. R. Evid. 1003.

**167.**   Herein, the preceding section demonstrates that there is a genuine question concerning the authenticity and existence of the indorsement that appears on the Note attached to Claim #4 given the physical appearance of the indorsement, the absence of required information from the indorsement, and the mysterious timing of the indorsement's appearance as shown in the two proofs of claims filed relating to this Note.

     **C.**   **Procedural Issue 3 - Specific denial of validity of indorsement signature on note**

**168.**   Section 3.308 of the Texas Business & Commerce Code provides, "In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized."

**169.**   Debtor specifically denies the authority of the person who purportedly signed the indorsement to execute the indorsement on behalf of ABN AMRO Mortgage Group, Inc. ("ABN AMRO").

**170.**   Debtor specifically denies the authenticity of the signature and the indorsement on the Note attached to Claim #4.

**171.**   The Unsworn Affidavit of George Dale Wigington, EXHIBIT 1, is hereby incorporated herein.

## IX. OBJECTION TO CLAIM #4

**172.**   Debtor requests the Court to determine the amount of Claim #4 as of the date of the bankruptcy petition in this case and to disallow any portion of the claim that is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured pursuant to § 502(b)(1).

**173.**   Section VIII. CLAIMS ALLOWANCE PROCESS is hereby incorporated herein for all intents and purposes.

**174.**   Debtor objects to the claim based on the negative defenses and the affirmative defenses laid out in Section IX. OBJECTION TO CLAIM #4.

**Denials/ Negative Defenses**

### A.  Negative Defense 1 – General Denial

**175.**   Bankruptcy Rule 3001(f) does not change the ultimate burden of proof—the debtor has the initial burden of establishing a colorable challenge to a properly filed proof of claim; but once the debtor has met that burden, the burden of going forward shifts back to the creditor, and the creditor bears the ultimate burden of persuasion.

**176.**   Without a presumption of validity, Claimant must establish each element of a cause of action to impose any liability on the Debtor.  The Claimant must fully prove its case the same as a plaintiff in any federal suit.

**177.**   Debtor generally denies all allegations in Claim #4 and demands that Claimant be held to the burden of fulling proving each allegation.

*For a cause of action based on the Note*

**178.** Under Texas law, "[t]o recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner *or the holder of the note*; and (4) that a certain balance is due and owing on the note." *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999) (emphasis added); *see also Roberts v. Roper*, 373 S.W.3d 227, 232 (Tex. App. 2012) (same).

**179.** Except as to the purported indorsement and associated language, Debtor admits the existence of the Note in question.

**180.** Debtor admits he signed the Note.

**181.** Debtor denies that Claimant is the owner of the Note.

**182.** Debtor denies Claimant is the holder of the Note.

**183.** Debtor denies Claimant is a possessor of the Note with the right to enforce the note.

**184.** Debtor denies that Claimant is entitled to enforce the Note. A non-holder seeking to enforce a note must prove the transfer by which he acquired the note and the right to enforce the note.

**185.** Debtor denies that Citimortgage, Nationstar, and Select Portfolio are holders in due course as defined in Texas Business & Commerce Code Section 3.302 because:

    (1)    When negotiated to holder the note bore such evident and apparent evidence of forgery or alteration or is otherwise so irregular or incomplete as to call into question its authenticity,

    (2)    the holder did not take the instrument for value,

    (3)    the holder did not take the instrument in good faith,

    (4)    the holder did not take the instrument without notice that the instrument was overdue or had been dishonored,

    (5)    the holder did not take the instrument without notice that the instrument contains an unauthorized signature or had been altered,

    (6)    the holder did not take the instrument without notice that Plaintiff had a defense or claim in recoupment described in Section 3.305(a), and

    (7)    the holder did not take the instrument without notice of Debtor's bankruptcy discharge.

**186.** Select Portfolio took the instrument:

    (1)    with notice of Debtor's bankruptcy discharge,

(2)   with notice of Debtor's affirmative defenses provided in Chapter 3 of the Texas Business & Commerce Code or that are available to defend against a claim for right to payment under a simple contract,

(3)   with notice of Debtor's claim in recoupment against holder's predecessors in interest.

**187.**   Debtor denies that a certain balance is due and owing on the Note.

## B. <u>Negative Defense 2 - Calculation of Proper Amount of Claim</u>

**188.**   This calculation is subject to the affirmative defenses included in this objection and is not an admission that any amount of debt is owed by Plaintiff. This calculation is intended to calculate the maximum amount of the claim.

**189.**   If Claimant fails to prove or is precluded from proving the amount of the claim, the Court should allow the claim in the amount of $0.00.

*Principal Balance*

**190.**   The "Principal balance:" claimed is $113,195.77.  Debtor calculates the true principal balance to be $98,992.72.  This is based on a principal balance of $158,872 as of 4/4/2011 as calculated in ¶242 - 244.  Then, payments of principal as detailed in EXHIBIT 2A of $59,879.28 are deducted resulting in a principal balance of $98,992.72. See Section IX. K. Payments.

*Accrued Interest*

**191.**   The "Interest Due:" claimed is $10,407.29. Debtor calculates the true interest due to be $9,086.50.

**192.**   Proof of Claim # 28 indicated that there was no interest accrued as of 4/4/2011.  Debtor made payments of interest as detailed in EXHIBIT 2A for the period of 4/5/2011 to 12/1/2016.

**193.**   Thus, the true amount of Interest Due as of the petition date here, 10/2/2018 is determined by calculating twenty-two months of interest (12/2/2016 to 10/1/2018) on a principal balance of $98,992.72 at five percent interest.  ($98,992.72 X 0.05/12 X 22 = $9,086.50.)

*Escrow*

**194.**   Debtor does not dispute the amount claimed for "Escrow deficiency for funds advanced:"

of $7,157.81.

**195.**   Debtor does not dispute the amount claimed for "Projected escrow shortage" of $8,327.33.

*Fees*

**196.**   The "Fees, costs due:" claimed is $3,443.02.  Debtor calculates the true fees/costs due to

be $0.00.

**197.**   The unauthorized fees and costs listed in EXHIBIT 4A total $3,750.42.  Some of these fees

($307.04) have already been collected from Plaintiff's payments resulting in a misapplication of

payments due to improper credits to principal.

**198.**   Debtor's calculation of the principal due accounts for the $307.40 improperly diverted

from payments of principal.

*Part 2: Total Debt Calculation*

**199.**   The "Part 2: Total Debt Calculation" claimed is $134,203.89.  Debtor calculates the true

Part 2: Total Debt Calculation to be $115,237.03.

**200.**   This is calculated as follows:

| | |
|---|---|
| Principal Balance: | $98,992.72 |
| Interest due: | $9,086.50 |
| Fees, costs due | $0.00 |
| Escrow deficiency for funds advanced: | $7,157.81 |
| Less total funds on hand: | $0.00 |
| Other: | $0.00 |
| **Total debt:** | **$115,237.03** |

*Part 3: Arrearage as of Date of Petition*:
**201.**   The Part 3: Arrearage as of Date of Petition: claimed is $50,289.16.  Debtor calculates the

true amount of the Part 3: Arrearage as of Date of Petition: to be $46,849.14.

**202.**   This is calculated as follows:

| | |
|---|---|
| Principal & interest due: | $31,361.00 |
| (22 months @ $1,425.50) | |

| | |
|---|---|
| Prepetition fees due: | $0.00 |
| Escrow deficiency for funds advanced: | $7,157.81 |
| Projected escrow shortage: | $8,237.33 |
| Other: | $0.00 |
| **Total prepetition arrearage:** | **$46,846.14** |

### C.  Negative Defense 3 - Unauthorized Fees and Expenses

**203.** Select Portfolio is not entitled to, and Debtor is not liable for, the fees and expenses identified in EXHIBIT 4A, Unauthorized Fee Detail.

**204.** Citimortgage charged and collected improper miscellaneous fees, property inspection fees, reinstatement fees, and appraisal fees.

**205.** These fees were based on a default that occurred prior to Debtor's first bankruptcy case, or the Debtor's filing of that case. Of these fees, only $100 of the miscellaneous fee was included in Claim # 28. The remaining fees were not authorized by any contract or statute and were not permitted by the Court despite being incurred during the bankruptcy proceeding.

**206.** No claim for administrative expenses related to Claim #28 was filed in Case 11-41092.

**207.** Nationstar charged and collected improper legal, title, and foreclosure fees.

**208.** Examples of such, with no limitation, are foreclosure fees associated with filing a foreclosure in the wrong county, foreclosure fees incurred prior to a valid acceleration of the debt or after abandonment of any valid acceleration, and fees associated with invalid notice of sale.

**208.1.** These fees and expenses included in the amount of Claim # 4 are not permitted by contract or statute because they are unreasonable and unnecessary.

**209.** Claim #4 does not include any details to support the charges or fees such as invoices, payment records, etc. and therefore proof of such fees and charges is absent.

**210.** Claimant should be denied the opportunity to amend its Claim #4 to add such support.

### D.  Negative Defense 4 - Misapplication of Payments

**211.**     Payments made by Debtor have not been properly credited. Instead of applying payments to principal, some of Debtor's payments have been improperly applied to unauthorized fees and expenses and to excessive interest charges.

**212.**     Unauthorized fees and expenses have been accrued and charged to Debtor.

**213.**     Excessive interest charges have been accrued and charged to Debtor because:

(1)     an amount higher than the allowed secured claim was, and is, being used as the starting principal balance,

(2)     unauthorized fees and expenses have been charged to Debtor's account.

**Affirmative Defenses**

### E.  **Affirmative Defense 1 - Discharge in Bankruptcy**

**214.**     Debtor's, and the Debtor's spouse's, in persona liability under the Note and Deed of Trust that form the basis for Claim #4 was discharged in Debtor's prior bankruptcy case.

**215.**     The Debtor was granted a discharge under 1141(d)(5) on December 17, 2017.

**216.**     The Debtor's Chapter 11 plan was confirmed on June 6, 2013.

**217.**     The debt under the Note and Deed of Trust arose prior to the date of confirmation on December 29, 2004 when the documents were executed.

**218.**     Nothing in the confirmed plan, the confirmation order, or Subsection (d) of 11 U.S.C. 1141 except or exclude the debt under the Note and Deed of Trust from discharge.

**219.**     The debt under the Note and Deed of Trust are not excepted from discharge under any provision of 11 U.S.C. 523.

**220.**     The confirmed plan did not provide for the liquidation of all or substantially all of the property of the estate.

**221.**     The debt under the Note and Deed of Trust was provided for in Section 3.32 of the confirmed plan.

**222.**     The Debtor was not granted a hardship discharge under 11 U.S.C. 1141(d)(5)(B).

50

**223.**　The court did not approve a written waiver of discharge executed by the Debtor after the order for relief under Chapter 11.

**224.**　The Debtor did not reaffirm the debt under the Note and Deed of Trust.

### F.　**Affirmative Defense 2 - Avoidance of Pre-Confirmation Security Interests**

**225.**　Affirmative Defense dismissed or negated by Court order.

### G.　**Affirmative Defense 3 - Res Judicata (Claim Preclusion)**

**226.**　Nationstar and Select Portfolio are barred from disputing that all mortgage payments that became due between the petition date and the confirmation date in Case 11-41092 were not paid.

**227.**　For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

**228.**　The order confirming the Chapter 11 Plan, the order of discharge, and the notice of intent to issue discharge in the Debtor's prior bankruptcy case, 11-41092, are final judgment on the merits of Debtor's mortgage debt by a court of competent jurisdiction.

**229.**　The confirmation order, the order of discharge, and the notice of intent to issue discharge have not been appealed. The time for appeal has passed.

**230.**　The issue of any unpaid monthly payments between the petition date and confirmation date could have been raised at the hearing on confirmation.  The issue of whether all payments under the plan had been completed could have been raised during the time for objection permitted by the court at the hearing on the discharge order. Neither issue was raised.

**231.**　The Court had jurisdiction over Debtor's prior bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. The confirmation order, the order of discharge, and the notice of intent to issue discharge were core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L).

**232.**   Select Portfolio and Nationstar are in privity with the claimant in the prior case, Citimortgage, by way of the purported transfers of the Note and the purported assignments of the Deed of Trust from Citimortgage to Nationstar to Select Portfolio.

## H.   <u>Affirmative Defense 4 - Collateral Estoppel (Issue Preclusion)</u>

**233.**   Collateral estoppel, or issue preclusion, prevents the relitigation of a fact issue already resolved in a prior suit.

**234.**   Federal Collateral estoppel depends on three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action.

**235.**   The order confirming the Chapter 11 Plan in the Debtor's prior bankruptcy case, 11-41092, is a final judgment on the merits of Debtor's mortgage debt by a court of competent jurisdiction.

**236.**   The confirmation order was issued June 4, 2013 and has not been appealed. The time for appeal has passed.

**237.**   The Court had jurisdiction over Debtor's prior bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. The confirmation was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

**238.**   Select Portfolio and Nationstar are in privity with the claimant in the prior case, Citimortgage, by way of the purported transfers of the Note and the purported assignments of the Deed of Trust from Citimortgage to Nationstar to Select Portfolio.

**239.**   Claim #28 asserted that the amount of the mortgage debt as of April 4, 2011 was $159,937.34 and that there were no payments in arrears at that time.

**240.**   No objection to Claim #28 was filed.

**241.**   Pursuant to § 502(a), Claim #28 was deemed allowed upon the expiration of the time provided in the plan to file a claim objection.  Thus, the allowance of the claim is a final judgment

on the merits of Debtor's mortgage debt by a court of competent jurisdiction.  The allowance of the

claim has not been appealed and the time for appeal has passed.

**242.**   Nationstar and Select Portfolio are barred by res judicata from contending or relitigating

the fact that the amount of the mortgage debt as of April 4, 2011 was $159,937.34 as stated in Box

1 of the proof of claim "Amount of Claim as of Date Case Filed." (EXHIBIT 7, page 1).

**243.**   Nationstar and Select Portfolio are also barred from relitigating the following facts

regarding the status of the mortgage debt as of April 4, 2011.  The instructions for Box 1 states

"Check this box if claim includes interest or other charges in addition to the principal amount of

the claim.  Attach itemized statement of interests or charges.   This box was checked and page two

of the proof of claim provided the following itemized interest and charges included in the amount

of the proof of claim that where in addition to the principal balance. (EXHIBIT 7, page 2).

| | |
|---|---|
| NUMBER OF PAYMENTS IN ARREARS | 0 |
| POST-PETITION BANKRUPTCY ATTY. FEES & COSTS | $ 100.00 |
| UNCOLL. LATE CHARGES | $    0.00 |
| ESCROW ADV / SHORTAGE | $ 965.31 |
| NSF FEES | $    0.00 |
| INSPECTION FEES | $    0.00 |
| ACCRUED LATE CHARGES | $    0.00 |
| PRE-PETITION ATTY. FEES | $    0.00 |

**244.**   Thus, the principal balance of the mortgage debt, as of April 4, 2011, can be calculated by

subtracting the itemized interest and charges ($100 and $965.31) from the total amount of the claim

($159,937.34.).  The result is $158,872.00.

**245.**   The Debtor and Citimortgage were named parties in Debtor's prior bankruptcy case.

Nationstar is the successor in interest by assignment and transfer to Citimortgage. Select Portfolio

is the successor in interest by assignment and transfer to Nationstar.

## I.   <u>Affirmative Defense 5 - Novation, Modification, Treatment of Note & Deed of Trust Under Confirmed Bankruptcy Plan</u>

**246.**   Affirmative Defense dismissed or negated by Court order.

53

### J.        **Affirmative Defense 6 - Tender**

**247.**    Affirmative Defense dismissed or negated by Court order.

### K.        **Affirmative Defense 7 - Payment**

**248.**    Debtor is entitled to have all payments made properly credited against the proper beginning principal balance and to have all unauthorized fees and expenses removed from his account. Debtor is also entitled to have unauthorized interest charges removed from his account.

**249.**    Because of the allowance of Citimortgage's proof of claim in Case 11-41092, the calculation of the current debt must be calculated starting with the amount of the allowed claim and subtracting all payments made since that time.  These payments are to include the payments that became due between the petition date and confirmation date in that case.  The confirmed plan provided that the debt "will be considered current upon confirmation."  This result also conforms to the Court's res judicata ruling concerning confirmation.

**250.**    Between April 5, 2011 and present, Plaintiff made seventy-one mortgage payments to Citimortgage and to Nationstar via Citimortgage.  These payments are detailed in EXHIBIT 2A which is incorporated herein for all purposes.

**251.**    Plaintiff is entitled to have these payment amounts deducted from the amount of the allowed claim in 11-41092 in determining the remaining amount of debt.

**252.**    The collective amount of these payments is $146,034.33.  The collective amount of principal payments made $59,879.28.  The collective amount of payments made for accrued interest is $37,054.72.  The collective amount of escrow payments is $49,100.13.

### L.        **Affirmative Defense 8 - Prior Material Breach**

**253.**    Nationstar and Citimortgage committed material breaches of the Note and the Deed, as amended by the Chapter 11 Plan prior to any breach committed by Debtor.

**254.**    These prior breaches include:

(1)    failure to apply payments properly;

(2)    failure to give proper notice of intent to accelerate prior to attempting to accelerate the debt;

(3)    providing and posting notice of foreclosure sales prior to a valid acceleration of the debt or after abandonment of any valid acceleration;

(4)    providing and posting notice of foreclosure sales in county other than the county that the property is located entirely within;

(5)    failure to give proper notice of foreclosure sale;

(6)    collection of unauthorized fees and expenses;

(7)    accrual and collection of excessive interest charges; and

(8)    directing person to post publicly post notice of foreclosure sales prior to the appointment of that person as substitute trustee.

**255.**    Debtor is excused from payment of any cost, expense, fee or other damages incurred by Nationstar and Citimortgage related to or resultant from any breach by Debtor subsequent to the breaches by Nationstar and Citimortgage.

### M.    <u>Affirmative Defense 9 - Recoupment</u>

**256.**    Debtor is entitled to recoup any recovery for the causes of action below against any liability Debtor is found to have under Claim #4. This recoupment is limited to the recovery of the amount of the fees, expenses, and interest charged to Plaintiff's account and deducted from payments made by Plaintiff.

**257.**    Nationstar and Select Portfolio had notice of Debtor's claims in recoupment against their predecessor in interest when they took the instrument.

### N.    <u>Affirmative Defense 10 - Laches</u>

**258.**    Affirmative Defense dismissed by Court.

### O.    <u>Affirmative Defense 11 - Satisfaction</u>

**259.**    Affirmative Defense dismissed or negated by Court order.

### P.    <u>Affirmative Defense 12 - Release and Waiver of Recourse</u>

**260.**    Affirmative Defense dismissed or negated by Court order.

## X. ACTION TO DETERMINE THE VALIDITY, PRIORITY, AND EXTENT OF LIEN

**261.**   Cause of action dismissed by Court.

## XI. COMPLAINT

**262.**   The doctrines of res judicata and collateral estoppel previously asserted above are re-asserted here in Plaintiff's request for affirmative relief and incorporated herein for all intents and purposes.

### A.   <u>Count 1 - Violation of Discharge Injunction 11 U.S.C. 524(a)(2)</u>

**263.**   Cause of action dismissed by Court.

### B.   <u>Count 2 - Violation of Discharge Injunction 11 U.S.C. 524(i) 11-41092</u>

**264.**   Cause of action dismissed by Court.

### C.   <u>Count 3 - Violation of Discharge Injunction 11 U.S.C. 524(i) 18-42230</u>

**265.**   Cause of action dismissed by Court.

### D.   <u>Count 4 - Contempt for Violation of Discharge Injunction</u>

**266.**   Cause of action dismissed by Court.

### E.   <u>Count 5 - Violation of Automatic Stay 11 U.S.C. 362 18-42230</u>

**267.**   Cause of action dismissed by Court.

### F.   <u>Count 6 - Texas Fair Debt Collection Act</u>

**268.**   Cause of action against Select Portfolio dismissed by Court.

**269.**   Plaintiff brings this cause of action against Nationstar pursuant to the Texas Debt Collection Act ("TDCA"), Sections 392.001 et seq. of the Texas Finance Code.

**270.**   At all times relevant to this petition, Nationstar has engaged in the business of debt collection in the State of Texas by:

- sending mortgage statements, notices of change of servicer, notices of default, notices of acceleration, notices of foreclosure sales, payoff statements, modification offers, SCRA notices, request for notices, and other assorted correspondence by mail and e-mail;
- filing proof of claim, and assigning deed of trust;

- referring Debtor's account for foreclosure, appointing substitute trustees, directing trustee to post notices of foreclosure sale and to conduct foreclosure sales;
- collecting plan payments from Chapter 13 trustee and receiving Chapter 11 plan payments made by Debtor;
- paying property taxes, homeowner's insurance premiums, directing Plaintiff's homeowner's insurance provider to change standard mortgagee clause, and requesting tax authorities to send invoices to Nationstar;
- performing property inspections; and
- charging and collecting late fees, inspection fees, and legal fees.

**271.** On December 29, 2004, Plaintiff executed a Note and Deed of Trust related to the purchase of his home, the Property.

**272.** Plaintiff is a consumer. Plaintiff has an obligation or alleged obligation obtained primarily for personal and family purposes, namely the mortgage debt on his home.

**273.** Nationstar is a debt collector. Nationstar directly and indirectly collected mortgage payments either as holder of the debt or as a servicer of the mortgage.

*TDCA § 392.301(8)*

**274.** In the course of debt collection against Plaintiff, Nationstar has used threats, coercion, or attempts to coerce that employ the practice of threatening to take an action prohibited by law in violation of TDCA § 392.301(8).

**275.** Specifically, Nationstar threatened to:

(1)   accelerate the debt without proper notice of intent to accelerate,
(2)   sell the Property when the debt had not been properly accelerated,
(3)   sell the Property at a foreclosure sale without giving proper notice of the sale,
(4)   sell the Property at a foreclosure sale to be conducted in a county other than one in which the property was located, and
(5)   sell the Property after it had abandoned the acceleration of the debt.

*TDCA § 392.303(2)*

**276.** In the course of debt collection against Plaintiff, Nationstar has used unfair or unconscionable means that employ the practice of collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation that was not expressly authorized by the

agreement creating the obligation or legally chargeable to the consumer in violation of TDCA § 392.303(2).

**277.**   Specifically, Nationstar has collected or attempted to collect

(1)      unauthorized fees and expenses detail in EXHIBIT 4A.

**278.**   Nationstar has collected or attempted to such charges, expressly and by incorporating them into the various balances shown, in mortgage statements, in various other mail correspondence and email correspondence, in notices of default, notices of foreclosure sale, posted notices of foreclosure sales, payoff statements, and account transaction reports produced in discovery.

*TDCA § 392.304(12)*

**279.**   In the course of debt collection against Plaintiff, Nationstar has used a fraudulent, deceptive, or misleading representation that employs the practice of representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges when no written contract or statute authorizes the additional fees or charges in violation of TDCA § 392.304(12).

**280.**   Specifically, Nationstar represented that the mortgage debt may be increased by:

(1)      unauthorized fees and expenses detailed in EXHIBIT 4A,

**281.**   These representations were made by Nationstar when it included such charges, expressly and by incorporating them into the various balances shown, in mortgage statements, in various other mail correspondence and email correspondence, in notices of default, notices of foreclosure sale, posted notices of foreclosure sales, payoff statements, account transaction reports produced in discovery, and account transaction reports in proofs of claims.

**282.**   Specifically, Nationstar representing that a consumer debt may be increased by the

addition of attorney's fees, investigation fees, service fees, or other charges as identified in the

following documents and paragraphs:

(1)   First Mod Solicitation ¶ 50;
(2)   Loss Mitigation" Notice ¶ 51;
(3)   Default Notice ¶ 52, 53;
(4)   Second Mod Solicitation ¶ 58;
(5)   First Payoff Notice ¶ 62;
(6)   Payoff Statement Explanation ¶ 63;
(7)   First Notice of Sale ¶ 64;
(8)   First Posted Notice of Sale¶  65, 769 - 772;
(9)   Second Notice of Sale ¶ 74;
(10)  Appointment of Substitute Trustee ¶ 76;
(11)  Second Posted Notice of Sale ¶ 75, 769 - 772;
(12)  Emails with Lewis Re: Current ¶ 79;
(13)  Second Amended Motion for Summary Judgment ¶ 96;
(14)  CFPB 45 Day Solicitation Ltr 08.01.2018 ¶ 110;
(15)  Emails from Mr. Cooper ¶ 111;
(16)  Pre-Approved Modification 08.13.2018 ¶ 112;
(17)  Validation Notice ¶ 113;
(18)  Appointment of Substitute Trustee ¶ 114, 798 - 799;
(19)  Third Notice of Sale ¶¶ 115, 116, 117;
(20)  Third Posted Notice of Sale ¶ 119, 803, 806, 808 - 809;
(21)  Auction.com posting ¶ 120;
(22)  Payoff Statement 2 ¶ 121;
(23)  Proof of Claim ¶ 124, 816, 818 - 819;
(24)  CFPB 45 Day Solicitation Ltr 11.19.2018 ¶ 125;
(25)  Objection to Confirmation ¶ 126;
(26)  Motion for Relief from Stay ¶ 127, 827 - 828;
(27)  Assignment of Deed of Trust to Select Portfolio ¶ 139, 833 - 834;
(28)  Malicious Credit Reporting ¶ 146;
(29)  Mortgage Statements ¶¶ 156, 158;
(30)  Post-Discharge SCRA letters ¶ 160; and
(31)  SPOC Change Assignment Letter 10.11.2018 ¶ 164.

*TDCA § 392.304(15) Violate Postal Laws*

**283.**   In the course of debt collection against Plaintiff, Nationstar has used a fraudulent, deceptive,

or misleading representation that employs the practice of using a written communication that

violates the United States postal laws and regulations in violation of TDCA § 392.304(15).

**284.** Nationstar placed envelopes containing legal notices to Plaintiff in the U.S. Mail that displayed first-class postmarks (applied by Nationstar) dated two or more days prior to the date that Nationstar actually deposited those envelopes into the U.S. Mail in violation of the Mailing Standards of the United States Postal Service, Domestic Mail Manual Section 4.6.2(a).

**285.** Specifically, Nationstar:

(1) Placed the First Notice of Foreclosure Sale (EXHIBIT 31) in the U.S. Mail on June 12, 2017 in an envelope with first-class postage marked June 9, 2017, and

(2) Placed the Second Notice of Foreclosure Sale (EXHIBIT 33) in the U.S. Mail on July 10, 2017 in an envelope with first-class postage marked July 6, 2017.

*Damages*

**286.** Nationstar's wrongful acts caused injury to Plaintiff.

**287.** <u>Economic Damages.</u> Plaintiff suffered economic damages as described in ¶130 and hereby incorporated herein.

**288.** <u>Non-Economic Damages.</u> Plaintiff suffered non-economic damages as described in ¶ 131 and hereby incorporated herein.

**289.** <u>Mental Anguish.</u> Plaintiff suffered mental anguish as described in ¶ 132 and hereby incorporated herein.

**290.** <u>Gross Negligence.</u> Nationstar's conduct as described above constituted gross negligence, in that its' acts or omissions: (1) when viewed objectively from the standpoint of Nationstar at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Nationstar had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including plaintiff. As a result, plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**291.**   Malice. Nationstar acted with malice in engaging in the conduct described above, in that Nationstar had specific intent to cause substantial injury or harm to plaintiff. As a result, plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**292.**   Fraud. Nationstar's conduct as described above constituted fraud. As a result, plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**293.**   Attorney fees. Plaintiff is entitled to attorney's fees reasonably related to the amount of work performed and costs pursuant to Section 392.403(b) of the Texas Finance Code.

### G.   Count 7 - Deceptive Trade Practices Act

**294.**   Cause of action against Select Portfolio dismissed by Court.

**295.**   Plaintiff brings this cause of action against Nationstar pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), Sections 17.01 et seq. of the Texas Business & Commerce Code.

**296.**   The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."

**297.**   Plaintiff is a consumer.  He sought and obtained a home by purchase for personal use as his residence.  Plaintiff is not a business consumer.

**298.**   Real property is a "good." The particular good sought and obtained by the Plaintiff relative to this action is his residence, the Property.

**299.**   The Property forms the basis for this complaint and the damages flow from Plaintiff's attempt to counter the false, misleading, or deceptive acts of Nationstar and prevent the unconscionable attempts to sell his home at a foreclosure auction, his fear that he might be unable

to do so and have his home taken from him, and his fear that the might lose his wife while attempting to do so even if he were ultimately successful.

**300.** Nationstar is association that can be sued under the DTPA, namely a limited liability company.

**301.** Plaintiff considered the purchase of his home and the purchase money financing he received (as evidenced by the Note and Deed of Trust he executed on December 29, 2004) to be a single transaction in which he obtained the Property from the seller aided by the financing provided by ABN AMRO.

**302.** Nationstar purported to be the holder of the Note and the Deed of Trust at the time of its acts or practices complained of below.

*Misrepresentations of Agreement*

**303.** Nationstar has used or employed false, misleading, or deceptive acts or practices specifically enumerated in a Section 17.46(b) of the Texas Business and Commerce Code which Plaintiff relied on to his detriment.  Such acts include "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." §17.46(b)(12).

**304.**    Specifically, Nationstar:

    (1)    that Nationstar could legally foreclose on the Property despite the lack of proper acceleration of the debt (or abandonment of any valid acceleration), notice of intent to accelerate, and notice of sale;

    (2)    that an improperly appointed trustee could conduct the foreclosure sale;

    (3)    that the foreclosure sale could be conducted in a county in which no part of the property was located; and

    (4)    that actual notice received less than 20 days prior to a foreclosure sale constituted proper notice under the Deed of Trust.

**305.** Although Plaintiff believed that these representations were false, due to the complexity of the matter Plaintiff was unsure.  Plaintiff was also concerned that despite the invalidity of these

representations, he might still lose his home because of a lack of remedies and ability to access legal

assistance.  Plaintiff's reliance is evidenced by his actions to call out and counter the invalid actions,

by the mental anguish and physical injuries he suffered, and by his actions to minimize his damages.

*Unconscionable action or course of action*

**306.**   Nationstar engaged in an unconscionable action or course of action that, to Plaintiff's

detriment, took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a

grossly unfair degree. § 17.50(a)(3).

**307.**   Specifically, Nationstar:

(1)   attempted three times to sell Plaintiff's property on the foreclosure block when it
had failed to provide proper notices and follow procedures required for a non-
judicial foreclosure by the Property Code and the deed of trust;

(2)   purported to give 30-day notice (when only a 29-day notice was provided) by
dating the notice one day prior to it being placed in the U.S. Mail;

(3)   attempted to use Plaintiff's lack of access to information regarding the date the
sales notices were mailed in discussions regarding the validity of the notice;

(4)   attempted to use Plaintiff's lack of access to information regarding the date the
default notice was mailed in discussions regarding the validity of the notice; and

(5)   attempted to use Plaintiff's lack of access to information regarding the date the
trustee conducting the first foreclosure sale was appointed and whether there was a
proper authorization chain for his appointment

**308.**   Nationstar took advantage of its position as a sophisticated party, its financial resources, its

access to legal resources, and its utter disregard for proper procedure—in a complicated

environment—to coerce the Plaintiff into paying an invalid debt due to fear off losing the Plaintiff's

home, health, well-being, and wife.

**309.**   Nationstar took grossly unfair advantage of Plaintiff's position (capacity and ability) as a

mortgagor by using the lack of consumer protection in a non-judicial foreclosure to collect the

debt without complying with the statutory and contractual predicates to invoking the power of

sale.

*Tie In Violations of TDCA*

Nationstar's violations of Chapter 392 of the Texas Finance Code as alleged and detailed above are deemed deceptive trade practices actionable under Subchapter E, Chapter 17 of the Texas Business & Commerce Code pursuant to §392.404 of the Texas Finance Code. Section IX. F. Texas Fair Debt Collect Action is hereby incorporated herein.

*Damages*

**310.**    Nationstar's wrongful conduct was a producing cause of Plaintiff's injuries.

**311.**    <u>Economic Damages.</u>  Plaintiff suffered economic damages as described in ¶ 130 and hereby incorporated herein.

**312.**    <u>Non-Economic Damages.</u> Plaintiff suffered non-economic damages as described in ¶ 131 and hereby incorporated herein.

**313.**    <u>Mental Anguish.</u> Plaintiff suffered mental anguish as described in ¶ 132 and hereby incorporated herein.

**314.**    <u>Knowing Violations.</u> Nationstar acted knowingly, as defined by §17.45(9) of the Texas Business & Commerce Code, which entitles Plaintiff to recover damages for mental anguish and treble the amount of economic damages found by the trier of fact pursuant to Texas Business & Commerce Code §17.50(b)(1).

**314.1.**  Nationstar had actual awareness, at the time of the acts or practices complained of above, of the falsity, deception, or unfairness of the acts or practices giving rise to Plaintiff's claim.

**315.**    <u>Intentional Violations.</u> Nationstar acted intentionally, as defined by §17.45(13) of the Texas Business & Commerce Code, which entitles Plaintiff to recover treble the amount of the economic damages found by the trier of fact and treble the amount of the damages for mental found by the trier of fact pursuant to Texas Business & Commerce Code §17.50(b)(1).

**315.1.** Nationstar had actual awareness of the falsity, deception, or unfairness of the acts or practices, coupled with the specific intent that Plaintiff act, or fail to act, in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

**316.**   <u>Tie In Statutes.</u>  Plaintiff's recovery for violations of TDCA actionable under the DTPA is not limited to economic damages, Plaintiff may recover actual damages per §17.50(h).

**316.1.** Nationstar acted knowingly or intentionally, which entitles Plaintiff to recover treble actual damages for violation of the tie in statutes per §17.50(h).

**317.**   <u>Attorney fees.</u> Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d)

## H.   Count 8 - Federal Fair Debt Collection Act

**318.**   Cause of action dismissed by Court.

## I.   Count 9 - Breach of Contract

**319.**   Cause of action against Select Portfolio dismissed by Court.

**320.**   The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach.

**321.**   The note and deed of trust constituted a valid, enforceable contract between Plaintiff and Citimortgage. Nationstar, as Citimortgage's successor in interest by assignment, is also bound by the contract.

**322.**   Plaintiff has performed or tendered performance under the contract.

**323.**   Nationstar has breached the contract.

**324.**   Plaintiff has sustained damages as a result of Nationstar's breaches.

**325.**   Plaintiff has used the Property as his residence continuously since purchasing it.

**326.**   The Property is located entirely within Dallas County.

*In General*

**327.**   Nationstar failed to provide proper notice of its intent to accelerate the debt which invalidated any acceleration of the debt.  Thus, each of Nationstar's acts to accelerate the debt, notices of acceleration, notices of sale, and attempts to conduct a foreclosure sale were in violation of Section 22 of the Deed of Trust.

**328.**   Alternately, Nationstar abandoned any purported acceleration of the debt in the monthly statements it sent to Plaintiff between February 2017 and October 2017 (EXHIBIT 62), between February 2017 and May 2017 (EXHIBIT 63), and in June 2018 (EXHIBIT 64).  Thus, each of Nationstar's acts to accelerate the debt, notices of acceleration, notices of sale, and attempts to conduct a foreclosure sale were in violation of Section 22 of the Deed of Trust.

**329.**   Nationstar breached Section 22 yet again in its notices of the foreclosures sales by noticing the first sale to occur in Collin County, by providing only a 19-day notice of sale in its second attempt and by improper appointment of the substitute trustee in the first and second attempts.

*No Valid 30-Day Notice of Default Provided*

**330.**   Section 22 of the Deed of Trust requires that the notice of default:

> shall specify: (a) the default; (b) the action required to cured the default; (c) a date not less than 30 days from the date the notice is given to Borrower; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and the sale of the Property.

**331.**   Section 15 of the Deed of Trust states:

> Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first claim mailed or when actually delivered to Borrower's notice address if sent by other means.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Sections 51.002(d) and (e) of the Texas Property Code state:

(d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).  The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

(e)  Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.

**332.**   Pursuant to Sections 15 and 22 of the Deed of Trust and Subsections 51.002(d) and (e), the notice of default was given on March 1, 2017 when it was placed into the U.S. Mail as certified mail, not on February 28, 2017—the date on the notice of default.

**333.**   The notice of default required Plaintiff to cure the alleged default by March 30, 2017.

**334.**   The Deed of Trust is silent on the computation of the duration of the notice period, but Section 51.002(d) provides that the day the notice is given is included, and the final day of the period is excluded, in computing the notice period.

**335.**   Thus, when a notice of default is given on March 1 and requires that a default be cured on or before March 30; a 29-day notice has been provided. This is the case here.

**336.**   The notice of default dated February 28, 2017 failed to satisfy the notice requirements of Section 22 of the Deed of Trust.

**337.**   Nationstar never purported to issue any other notice of default.

*Waiver of Acceleration*

**338.**   Even had Nationstar's acceleration of the debt been valid, Nationstar waived the acceleration

of the debt by demanding less than full payment of the debt in the monthly mortgage statements and

modification offers it subsequently made.

*Lack of Predicate to Accelerate the Debt*

**339.**   The Deed of Trust, Section 22, expressly conditions the Lender's power of sale and the right

to accelerate the debt on (1) the existence of a default and (2) the borrower's failure to cure the

default in response to a proper 30-day notice of default.

> Lender shall give notice to Borrower prior to acceleration following Borrower's
> breach of any covenant or agreement in this Security Instrument.

> If the default is not cured on or before the date specified in the notice, Lender at its
> option may require immediate payment in full of all sums secured by this Security
> Instrument without further demand and invoke the power of sale and any other
> remedies permitted by Applicable Law.

**340.**   Nationstar's attempts to accelerate the debt and to enforce the power of sale were breaches

of Section 22 because the second predicate for such actions was ever satisfied.

**341.**   Without a valid, unabandoned acceleration, the right to conduct a foreclosure sale never

arose under the contract.

*Breaches in Enforcement of Power of Sale*

**342.**   Aside from having no contractual authority to sell the Property, Nationstar also committed

separate breaches in its attempts to sell the Property.

**343.**   Section 22 states:

> If the Lender invokes the power of sale, Lender or Trustee shall give notice of the
> time, place, and terms of the sale by posting and filing the notice at least 21 days
> prior to sale as provided by Applicable Law.

**344.**   Section 51.002(a) of the Texas Property Code requires that a foreclosure sale:

> must take place at the county courthouse in the county in which the land is located,
> or if the property is located in more than one county, the sale may be made at the
> courthouse in any county in which the property is located.

**345.**    Section 51.002(b) of the Texas Property Code requires that:

notice of the sale, which must include a statement of the earliest time at which the
sale will begin, must be given at least 21 days before the date of the sale by:
(1)  posting at the courthouse door of each county in which the property is located a
written notice designating the county in which the property will be sold;
(2)  filing in the office of the county clerk of each county in which the property is
located a copy of the notice posted under Subdivision (1); and
(3)  serving written notice of the sale by certified mail on each debtor who, according
to the records of the mortgage servicer of the debt, is obligated to pay the debt.

*Wrong County*

**346.**    Nationstar's first notice of sale to Debtor, EXHIBIT 31 stated that "the public auction of the

property described in the notice is scheduled for Tuesday, July 4, 2017, between the hours of 10:00

A.M. and 4:00 P.M. at the Collin County Courthouse. This breached Section 22 of the Deed of Trust

because it was not as provided by law, specifically Section 51.002(a).

**347.**    Nationstar filed and posted, EXHIBIT 32, the notice of sale that the Property with the Collin

County Clerk's Office and at the door of the Collin County Courthouse. This breached Section 22

of the Deed of Trust because it was not as provided by law, specifically Section 51.002(b).

*19-Day Notice*

**348.**    Nationstar's second notice of sale, EXHIBIT 33, was not sent via certified mail, it was sent

via regular first-class mail in contravention of § 51.002(e) which requires service by certified mail.

**349.**    Section 51.002(e) of the Texas Property Code provides that:

Service of a notice under this section by certified mail is complete when the notice
is deposited in the United States mail, postage prepaid and addressed to the debtor at
the debtor's last known address. The affidavit of a person knowledgeable of the facts
to the effect that service was completed is prima facie evidence of service.

**350.**    Because Nationstar failed to send the notice via certified mail, service was not "complete

when the notice [was] deposited in the United States Mail." Instead, notice was not complete until

Plaintiff actually received the mailed notice.

**351.**   As a result, the notice of sale was "given" to Plaintiff on the day he received the notice, not on the day that the notice was placed in the U.S. Mail.

**352.**   Plaintiff received the notice of sale on July 13, 2017 in his mailbox.

**353.**   The notice of sale stated that the "the public auction of the property described in the notice is scheduled for Tuesday, August 1, 2017.

**354.**   Section 51.002(g) provides the method to calculate this notice period, stating:

> The entire calendar day on which the notice of sale is given, regardless of the time of day at which the notice is given, is included in computing the 21-day notice period required by Subsection (b), and the entire calendar day of the foreclosure sale is excluded.

**355.**   Here, the notice of sale was given on July 13, 2017 and the day of the foreclosure sale was August 1, 2017. Thus, Nationstar provided a 19-day notice of sale. This breached Section 22 of the Deed of Trust directly and indirectly because it was not as provided by law, specifically Section 51.002(b) and (g).

*Appointment of Substitute Trustee*

**356.**   Section 24 of the Deed of Trust states:

> Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee without the necessity of any formality other than a designation by Lender in writing.

**357.**   Nationstar directed Garvin to file and post the first and second notices of sale of the Property on June 12, 2017 and July 10, 2017 and Garvin did so.

**358.**   Garvin signed the posted notices of sale as "substitute trustee" indicating that Nationstar had requested him "as Substitute Trustee" to conduct the sale.

**359.**   Nationstar purported to appoint Garvin substitute trustee on July 12, 2017 (EXHIBIT 34).

**360.**   Thus, Nationstar breached Section 24 by directing Garvin to post the first and second notices of sale as substitute trustee prior to having appointed Garvin substitute trustee in writing.

**361.**   In addition, the corporate authority to appoint a trustee under the deed of trust was never properly vested in Jeffrey B. Lewis via a legitimate chain of authority/authorization.

*Unauthorized Collection of Attorney's Fees and Costs of Title Evidence*

**362.**   Section 22 of the Deed of Trust provides that Lender is entitled to "reasonable attorneys' fees and costs of title evidence" if the default is not cured on or before the date specified in the notice of default.

**363.**   The notice of default given does not constitute a notice of default under Section 22 because the notice actually given was only a 29-day notice.  In addition, attorneys' fees and costs of title evidence incurred subsequent to an abandonment of acceleration are not recoverable under Section 22.

**364.**   The attorney fees, title evidence fees, and other foreclosure related costs as detailed in EXHIBIT 4A were unauthorized. Nationstar breached Section 22 when it charged these fees to Debtor's account and when it attempted to collect them.

*Other Unauthorized Fee*

*Damages*

**365.**   Nationstar's wrongful acts caused injury to Plaintiff.

**366.**   <u>Direct Damages.</u> Plaintiff incurred expenses as a result of these breaches including court fees, transcript fees, document fees, notary fees, parking fees, toll fees, mileage expenses, and costs for office supplies. Plaintiff was required to spend many hours working to counter these breaches and to prevent future breaches. Plaintiff incurred these expenses and spent this time to mitigate his losses.

**367.**   <u>Consequential Damages.</u> Plaintiff incurred expenses as a result of these breaches including court fees, transcript fees, document fees, notary fees, parking fees, toll fees, mileage expenses, and costs for office supplies. Plaintiff was required to spend many hours working to counter these

breaches and to prevent future breaches. Plaintiff incurred these expenses and spent this time to

mitigate his losses.

**368.** <u>Nominal Damages.</u> Plaintiff seeks nominal damages.

### J.      <u>Count 10 - Negligence</u>

**369.** Cause of action against Select Portfolio dismissed by Court.

**370.** Under the common law, a cause of action for negligence has three elements: 1) a legal duty;

2) a breach of that duty; and 3) damages proximately resulting from the breach.

**371.** Nationstar owed a legal duty to Plaintiff to provide proper notice prior to acceleration of the

debt and proper notice of the sale of the Property being sold under a deed of trust prior to attempting

to conduct a foreclosure sale under the deed of trust.

**372.** Nationstar breached its duties by failing to provide proper notice prior to acceleration of the

debt and by failing to provide proper notice of the sale of the Property.

**373.** Nationstar owed a legal duty to Plaintiff conduct any foreclosure sale under the Deed of

Trust in Dallas County where the property is located.

**374.** Nationstar breached its duties by noticing and posting a foreclosure sale in Collin County.

*<u>Damages</u>*

**375.** Nationstar's wrongful acts proximately caused injury to Plaintiff.

**376.** <u>Economic Damages.</u>  Plaintiff suffered economic damages as described in ¶ 130 and hereby

incorporated herein.

**377.** <u>Non-Economic Damages.</u> Plaintiff suffered non-economic damages as described in ¶ 131

and hereby incorporated herein.

**378.** <u>Mental Anguish.</u> Plaintiff suffered mental anguish as described in ¶ 132 and hereby

incorporated herein.

**379.** <u>Gross Negligence.</u> Nationstar's conduct as described above constituted gross negligence, in that its acts or omissions: (1) when viewed objectively from the standpoint of Nationstar at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Nationstar had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including plaintiff. As a result, Plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**380.** <u>Malice.</u> Nationstar acted with malice in engaging in the conduct described above, in that Nationstar had specific intent to cause substantial injury or harm to plaintiff. As a result, Plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

## K.      **Count 11 - Negligence Per Se**

**381.** To state a claim for negligence per se, a plaintiff must show that the defendant violated the statute and that such violation was the proximate cause of his damages.

**382.** Nationstar violated Sections 51.002(a), (b), and (d) of the Texas Property Code.

**383.**  Section 51.002(a) of the Texas Property Code requires that a foreclosure sale:

> must take place at the county courthouse in the county in which the land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located.

**384.** Nationstar's first notice of sale to Debtor, EXHIBIT 31 stated that "the public auction of the property described in the notice is scheduled for Tuesday, July 4, 2017, between the hours of 10:00 A.M. and 4:00 P.M. at the Collin County Courthouse. This breached Section 51.002(a).

**385.** Section 51.002(b) of the Texas Property Code requires that:

> notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

(1)  posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
(2)  filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
(3)  serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

**386.**    Nationstar's second notice of sale, EXHIBIT 33, was not sent via certified mail, it was sent via regular first-class mail in contravention of § 51.002(e) which requires service by certified mail.

**387.**    Section 51.002(e) of the Texas Property Code provides that:

Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

**388.**    Because Nationstar failed to send the notice via certified mail, service was not "complete when the notice [was] deposited in the United States Mail."  Instead, notice was not complete until Plaintiff actually received the mailed notice.

**389.**    As a result, the notice of sale was "given" to Plaintiff on the day he received the notice, not on the day that the notice was placed in the U.S. Mail.

**390.**    Plaintiff received the notice of sale on July 13, 2017 in his mailbox, the notice of sale stated that the "public auction of the property described in the notice is scheduled for Tuesday, August 1, 2017. Thus, Nationstar violated § 51.002(b) because it provided notice of sale only 19 days prior to the sale instead of the required 21 days.

**391.**    Nationstar filed and posted, EXHIBIT 32, the notice of sale that the Property with the Collin County Clerk's Office and at the door of the Collin County Courthouse. This breached Section 51.002(b) because the property is located in Dallas County.

**392.**    Sections 51.002(d) of the Texas Property Code state:

(d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating

that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).   The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

**393.**    Pursuant to Subsections 51.002(d) and (e), the notice of default was given on March 1, 2017 when it was placed into the U.S. Mail as certified mail, not on February 28, 2017—the date on the notice of default.

**394.**    The notice of default required Plaintiff to cure the alleged default by March 30, 2017.

**395.**    The Deed of Trust is silent on the computation of the duration of the notice period, but Section 51.002(d) provides that the day the notice is given is included, and the final day of the period is excluded, in computing the notice period.

**396.**    Thus, when a notice of default is given on March 1 and requires that a default be cured on or before March 30; a 29-day notice has been provided. This is the case here.

**397.**    Nationstar violated Section 51.002(d) not because it gave less that a 20 period to cure, but because it purported to give a 30-day period when in fact it gave only a 29-day period to cure.

**398.**    Plaintiff's damages were proximately caused by Nationstar's breaches.

**399.**    Plaintiff belongs to the class that the statute was intended to protect, specifically owners of real property used as their residence that are subject to the power of sale under a deed of trust.

**400.**    Plaintiff's injuries are the type that the statute was designed to prevent, specifically expenses and costs associated with and due to the improper use of the power of sale under a deed of trust.

**401.**    Section IX. J. Negligence is hereby incorporated herein.

## L.    Count 12 - Fraudulent Lien Texas CPRC 12.002

**402.**    Cause of action dismissed by Court.

## M.    Count 13 - Fraudulent Misrepresentation

**403.**    Cause of action dismissed by Court.

## N.    Count 14 - Fraudulent Scheme

**404.**    Cause of action dismissed by Court.

## O.    Count 15 - Unreasonable Debt Collection

**405.**    The Supreme Court of Texas has not directly addressed the elements to be proven in an action for unfair collection practices. While the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case, a plaintiff must generally prove that a defendant's debt collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Texas courts have also held that it is unreasonable to persist in collection efforts once the debtor has informed the collector/lender that the debt has been paid in full.

**406.**    At all times relevant to this petition, Nationstar has engaged in the business of debt collection in the State of Texas by:

- sending mortgage statements, notices of change of servicer, notices of default, notices of acceleration, notices of foreclosure sales, payoff statements, modification offers, SCRA notices, request for notices, and other assorted correspondence by mail and e-mail;
- filing proof of claim, notice of transfer of claim, and assignments of deed of trust;
- referring Debtor's account for foreclosure, appointing substitute trustees, directing trustee to post notices of foreclosure sale and to conduct foreclosure sales;
- collecting plan payments from Chapter 13 trustee and receiving Chapter 11 plan payments made by Debtor;
- paying property taxes, homeowner's insurance premiums, directing Plaintiff's homeowner's insurance provider to change standard mortgagee clause, requesting tax invoices be sent to them by tax authorities;
- performing property inspections; and
- charging and collecting late fees, inspection fees, legal fees.

**407.**    On December 29, 2004, Plaintiff executed a Note and Deed of Trust related to the purchase of his home, the Property.

**408.**    Plaintiff is a consumer.  Plaintiff has an obligation or alleged obligation obtained primarily for personal and family purposes, namely the mortgage debt on his home.

**409.**    Nationstar were motivated by their desire to collect an invalid debt. Nationstar intended to do so by enforcement of the Deed of Trust which it knew was unenforceable by power of sale at the time because of its failure to comply with contractual and statutory prerequisites to a foreclosure sale, against the Property of the Plaintiff.  Thus, Nationstar acted with intent inflict emotional injury on Plaintiff.

**410.**    Nationstar knew that its foreclosure attempts would deprive Plaintiff of his property unlawfully due to its failure to comply with the deed of trust and Property Code.

**411.**    Nationstar intended to place Plaintiff under extreme emotional distress to force him to pay the debt that Plaintiff was disputing.

**412.**    Nationstar's wrongful actions constituted a course of harassment that was willful, intentional, and malicious and with the intent to oppress and harass plaintiff and constituted.

**413.**    The wrongful acts include attempts to enforce the power of sale when the prerequisite to invocation of the power of sale had not been met, and without complying with the requirements of the deed of trust and Property Code in conducting a foreclosure sale.

**414.**    Nationstar had actual awareness of the falsity or deception, of the acts or practices, coupled with the specific intent that Plaintiff act, or fail to act, in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

**415.**    Nationstar had actual awareness of the falsity or deception, of the acts or practices, coupled with the specific intent that third parties act, or fail to act, in reliance on the falsity or deception to the detriment of the Plaintiff.

**416.**    In the alternative, Nationstar made the false or deceptive statements recklessly without any knowledge of its truth and as a positive assertion.

*Damages*

**417.**    Nationstar wrongful acts proximately caused injury to Plaintiff.

**418.**   <u>Economic Damages.</u>  Plaintiff suffered economic damages as described in ¶ 130 and hereby incorporated herein.

**419.**   <u>Non-Economic Damages.</u> Plaintiff suffered non-economic damages as described in ¶ 131 and hereby incorporated herein.

**420.**   <u>Mental Anguish.</u> Plaintiff suffered mental anguish as described in ¶ 132 hereby incorporated herein.

**421.**   <u>Gross Negligence.</u> Nationstar's conduct as described above constituted gross negligence, in that its act or omission: (1) when viewed objectively from the standpoint of Nationstar at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Nationstar had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff. As a result, Plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**422.**   <u>Malice.</u> Nationstar acted with malice in engaging in the conduct described above, in that it had specific intent to cause substantial injury or harm to Plaintiff. As a result, Plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

**423.**   <u>Fraud.</u> Nationstar's conduct as described above constituted fraud. As a result, Plaintiff seeks exemplary damages in this action under Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.

## XII. INCORPORATION OF EXHIBITS

**424.**   The following exhibits attached to, or incorporated within, Plaintiff's Third Amended Objection to Proof of Claim 4-1 of Nationstar Mortgage LLC d/b/a Mr. Cooper; and Complaint

[DOC 93] filed in this adversary proceeding is hereby adopted and incorporated into this pleading in its entirety for all purposes: Exhibits 2A and 4A.

**425.**     The following exhibits attached to, or incorporated within, Plaintiff's First Amended Objection to Proof of Claim 4-1 of Nationstar Mortgage LLC D/B/A Mr. Cooper; Action To Determine The Validity, Priority, And Extent Of Lien; And Complaint [DOC 21] filed in this adversary proceeding is hereby adopted and incorporated into this pleading in its entirety for all purposes: Exhibits 1, 3, 6 through 9, 11 through 36, 38 through 40, 42, 43, 46, 51 through 55, 62 through 69, 71 through 73, 75 through 79, 82 through 86.

**426.**     Plaintiff request the Court take judicial notice of the confirmation order issued in case 11-41092. [DOC 338 Case 11-41092].

## XIII.  RESERVATION OF RIGHT TO AMEND

**427.**     Plaintiff has filed a Motion to Clarify with regard to the Court's prior rulings on motions to dismiss.

**428.**     Although Plaintiff has attempted to comply with the Court's prior rulings in limiting the issues, negative defenses, and affirmative defensives contained herein, there is the possibility that Plaintiff has misconstrued the Court's prior rulings.

**429.**     In the event, the Court identifies any issues, negative defenses, and affirmative defensives included herein are not limited to or consistent with the Court's prior rulings, Plaintiff reserves the right to amend his pleadings in accordance with the Court's order on the Motion to Clarify unless the Court finds the inclusion herein was the result of intentional conduct, gross negligence, or otherwise contemptible.

## XIV. PRAYER

**WHEREFORE**, the Plaintiff respectfully requests that the Court:

(1)     Sustain the Debtor's objection to the Select Portfolio's proof of claim;

(2)     Allow Claim #4 in a reduced amount;

(4)     Enter Judgment in favor of Plaintiff and against Nationstar for damages requested including actual damages, economic damages, non-economic damages, direct damages, consequential damages, mental anguish damages, exemplary damages, and statutory damages;

(5)     Enter Judgment in favor of Plaintiff and against Nationstar for both pre-judgment and post judgment interest on all awards of restitution, damages or civil penalties, at the maximum rate allowed by law until paid;

(6)     Enter Judgment in favor of Plaintiff and against Nationstar for attorney's fees in a reasonable amount together with additions awards of attorney's fees in case of any and all appeals to other Courts, plus interest thereon at the maximum rate allowed by law from the date of judgment until paid;

(7)     Enter Judgment in favor of Plaintiff and against Nationstar for all costs of Court incurred herein, plus interest thereon at the maximum rate allowed by law from the date of judgment until paid; and

(8)     Grant any other such relief, specific or general, legal or equitable, to which Plaintiff may show himself to be justly entitled.


                                        Respectfully submitted,

                                        */s/ George Dale Wigington*
                                        George Dale Wigington
                                        Pro Se
                                        State Bar No.: 24091665
                                        Dalewig10@verizon.net
                                        2451 Elm Grove Road
                                        Wylie, TX 75098
                                        469-235-1482

80

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2021 a true and correct copy of the foregoing was on the following via CM/ECF:


Matthew D. Durham
MCGUIREWOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
*By email: mdurham@mcguirewoods.com*
**Attorney for Nationstar Mortgage, LLC**

Yoshie Valadez
McCarthy & Holthus, LLP
1255 W. 15th St., Suite 1060
Plano, TX 75075
*By email:* yvaladez@McCarthyHolthus.com
*& ECF/CM Delivery*
**Attorney for Select Portfolio Servicing, Inc.**

H. Gray Burks, IV
ShapiroSwartz, LLP
13105 Northwest Freeway, Suite 1200
Houston, Texas 77040
*By email: gburks@logs.com*
*& ECF/CM Delivery*
**Attorney for Nationstar Mortgage, LLC**


                                        */s/ George Dale Wigington*
                                        George Dale Wigington