## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CASE NUMBER: 18-42230** |
| | ) | **(Chapter 13)** |
| **GEORGE DALE WIGINGTON** | ) | |
| **d/b/a WYLIE INDUSTRIES** | ) | |
| **d/b/a WYLIE INVESTMENT GROUP** | ) | |
| | ) | |
| **Debtor** | ) | |
| | ) | |
| | ) | |
| **GEORGE DALE WIGINGTON,** | ) | |
| | ) | **ADVERSARY NO. 19-04074** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NATIONSTAR MORTGAGE LLC** | ) | |
| **d/b/a MR. COOPER and SELECT** | ) | |
| **PORTFOLIO SERVICING INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## NATIONSTAR'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.  IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.  IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

## TABLE OF CONTENTS

PAGE

I.  BRIEF BACKGROUND AND PROCEDURAL HISTORY ........................................... 2

II.  ARGUMENT AND AUTHORITIES ................................................................ 6

    A.  Standard. ................................................................................................ 6

    B.  Plaintiff fails to state a cognizable TDCA claim. ................................... 7

        1.  The economic loss rule bars the TDCA claims. ........................................ 7
        2.  No actual damages to support a TDCA claim. .......................................... 9
        3.  No violation of § 392.301(a)(8) (relating to threats or coercion). ........... 10
        4.  No violation of § 392.303(a)(2) (relating to unauthorized charges). ....... 12
        5.  No violation of § 392.304(a)(12) (relating to fraudulent or
           deceptive practices). .................................................................. 13
        6.  No violation of § 392.304(a)(15) (relating to postal laws and
           regulations). ............................................................................ 14

    C.  Plaintiff fails to state a cognizable DTPA claim. ................................... 14

    D.  Plaintiff fails to state a cognizable breach of contract claim. ............... 16

        1.  Plaintiff failed to perform or tender performance. .................................. 16
        2.  No actual damages to support the breach of contract claim. ................... 17

    E.  Plaintiff fails to state a cognizable negligence claim. ........................... 17

        1.  The economic loss rule bars Plaintiff's negligence claims. ..................... 17
        2.  Negligence claims fail because Nationstar owes no duty to
           Plaintiff. ................................................................................. 18
        3.  Negligence claims fail because Plaintiff suffered no damages. ............... 19
        4.  The negligence per se claim likewise fails because there is no
           private right of action and Nationstar has not violated Chapter 51
           of the Property Code. ................................................................ 19

    F.  Plaintiff's tort claim of unreasonable collection efforts fails as a matter of
       law. ....................................................................................................... 22

Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar" or "Mr. Cooper") hereby moves to dismiss the *Fourth Amended Objection to Proof of Claim 4-1 and Complaint* [Adversary Proceeding, Dkt. #119; the "Fourth Amended Complaint" or "Compl." herein] filed on 02/23/2021 by debtor and plaintiff George Dale Wigington ("Plaintiff"). Specifically, Nationstar moves to dismiss all causes of action asserted against it in the Fourth Amended Complaint:

    **(1)**      violation of the Texas Debt Collection Practices Act ("TDCA");

    **(2)**      violation of the Texas Deceptive Trade Practices Act ("DTPA");

    **(3)**      breach of contract;

    **(4)**      negligence and negligence per se; and

    **(5)**      unreasonable collection efforts.

In support thereof, Nationstar shows as follows:

## I.
## BRIEF BACKGROUND AND PROCEDURAL HISTORY[1]

1.    A mortgage loan arose from a Note dated 12/29/2004 and executed by George Dale Wigington and Teresa Lynn Wigington, said Note in the original principal amount of $216,000.00 and in favor of ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION ("Note"). That same day, Plaintiff and Teresa executed a Deed of Trust securing the Note; the Deed of Trust liens the property located at 2451 Elm Grove Road, Wylie, Texas (the "Property").

---

[1] Pursuant to Fed. R. Evid. 201, Nationstar respectfully requests that the Court take judicial notice of the docket and all pleadings and documents filed in **(1)** Plaintiff's prior Chapter 11 case, Case No. 11-41092; **(2)** Plaintiff's current Chapter 13 case, Case No. 18-42230; and **(3)** this adversary proceeding, A.P. Case No. 19-04074. In particular, Nationstar directs the Court's attention to: **(1)** *Proof of Claim No. 4-1* filed by Nationstar on November 7, 2018; **(2)** Corporate Assignment of Deed of Trust from Nationstar to Select Portfolio Servicing, Inc. recorded November 6, 2019 [Adversary Proceeding, Dkt. #21-3, Exhibit 17]; **(3)** Notice of Servicing Transfer from Select Portfolio Servicing, Inc. to George D. Wigington dated September 26, 2019 [Adversary Proceeding, Dkt. #21-6, Exhibit 43]; and **(4)** *Notice of Transfer of Claim No. 4-1* from Nationstar to Select Portfolio Servicing, Inc. filed on October 23, 2019 [Bankruptcy Proceeding, Dkt. #41].

2.      On 4/4/2011, Plaintiff and Teresa filed their Chapter 13 case, Case No. 11-41092, which

was subsequently converted to a Chapter 11 case on 4/12/2012 (the "Prior Chapter 11 Case").  An

order discharging both was entered on 12/15/2017.

3.      On 10/2/2018, Plaintiff filed a new Chapter 13 case, Case Number 18-42230 (the "Current

Case").   In the Current Case, Plaintiff filed a *Chapter 13* Plan on 11/5/2018 [Bankruptcy

Proceeding, Dkt. #15], and such plan was confirmed by order entered on 4/22/2019 [Bankruptcy

Proceeding, Dkt. #30].  In the Current Case, Nationstar filed *Proof of Claim No. 4-1* on 11/7/2018,

therein asserting a total secured claim of $134,203.89 with a pre-petition arrearage of $50,289.16

(the "Proof of Claim").

4.      Plaintiff initiated this adversary proceeding by filing his *Objection to Proof of Claim 4-1*

*of Nationstar Mortgage LLC d/b/a Mr. Cooper; Action to Determine the Validity, Priority, and*

*Extent of Lien; and Complaint* on 8/23/2019.   [Adversary Proceeding, Dkt. #1, the "Original

Complaint."]  Select Portfolio Servicing, Inc. ("SPS") took over the servicing of the mortgage loan

from Nationstar on 10/1/2019, and it filed a *Notice of Transfer of Claim* as to Claim No. 4-1 on

10/23/2019 in the Current Case.  [Bankruptcy Proceeding, Dkt. #41.]

5.      On 1/6/2020, Plaintiff filed his First Amended Objection to Proof of Claim 4-1 of

Nationstar Mortgage LLC d/b/a Mr. Cooper; Action to Determine the Validity, Priority, and Extent

of Lien; and Complaint.  [Adversary Proceeding, Dkt. #21; the "First Amended Complaint."]

6.      On 3/30/2020 and 4/29/2020, SPS and Nationstar filed their respective motions to dismiss

the First Amended Complaint.  [Adversary Proceeding, Dkt. #34 and Dkt. #49; the "Prior Motions

to Dismiss."]  On 4/21/2020 and 6/1/2020, Plaintiff filed his objections to the Prior Motions to

Dismiss.  [Adversary Proceeding, Dkt. #45 and Dkt. #62.]

7.      On 8/10/2020, this Court entered its *Memorandum Opinion* [Adversary Proceeding, Dkt. #65] whereby it granted the Prior Motions to Dismiss and further ordered "**that each and every cause of action seeking affirmative relief and damages, and each and every cause of action seeking lien avoidance or release, in Mr. Wigington's amended complaint against Nationstar and SPS is dismissed pursuant to Federal Rule 12(b)(6)**."  (Memo. Opinion, p. 15, emphasis added.)  Further, this Court ordered Plaintiff to file (by 8/24/2020) an amended objection to Claim No. 4-1 setting forth any objections to the calculation of the amount of the claim.

8.      On 8/13/2020, the Court held a management conference at which time Plaintiff agreed to certain deadlines in this adversary proceeding.  Accordingly, the Court entered a *Scheduling Order* [Adversary Proceeding, Dkt. #67] setting a discovery deadline of 11/30/2020, a dispositive motion deadline of 12/21/2020, and a trial setting telephonic conference for 1/7/2021.

9.      On 8/24/2020, rather than filing an amended objection to the calculation of Claim No. 4-1, Plaintiff filed a *Motion to Extend Debtor's Time to File an Amended Objection to Claim* [Adversary Proceeding, Dkt. #69] and a *Motion to Amend or Alter Judgment* [Adversary Proceeding, Dkt. #70].  On 9/14/2020, after a hearing was held on these motions, the Court entered its Amended Judgment [Adversary Proceeding, Dkt. #75], thereby extending Plaintiff's deadline to 9/15/2020 to file an amended objection as to the calculation of the amount of Claim No. 4-1. The *Amended Judgment* further allowed Plaintiff to amend his complaint against Nationstar for "causes of action limited to allegations regarding noticing acceleration, noticing foreclosure sales or appointing or noticing appointment of substitute trustees in violation of the note or deed of trust or applicable law." (Amended Judgment, p. 2.)

10.     On 9/15/2020, Plaintiff filed his *Second Amended Objection to Proof of Claim 4-1 of Nationstar Mortgage LLC d/b/a Mr. Cooper; Action to Determine the Validity, Priority, and*

*Extent of Lien; and Complaint.* [Adversary Proceeding, Dkt. #76, the "Second Amended Complaint.] The Second Amended Complaint incorporated by reference the entire First Amended Complaint and the exhibits therein.

11.     On 10/15/2020, SPS and Nationstar filed their motions to dismiss the Second Amended Complaint. [Adversary Proceeding, Dkt. #79 and Dkt. #80, respectively.] Nationstar also filed a *Motion for More Definite Statement* as to the Second Amended Complaint. [Adversary Proceeding, Dkt. #81.]

12.     On 11/30/2020, more than 3 weeks after the deadline to object under Local Bankruptcy Rule 9007(a), Plaintiff filed his objections to the motions to dismiss the Second Amended Complaint. [Adversary Proceeding, Dkt. #88 and Dkt. #89.] He also filed an objection to Nationstar's *Motion for More Definite Statement*. [Adversary Proceeding, Dkt. #90.] In addition, on 11/30/2020, Plaintiff also filed his *Motion for Extension of Time to Discovery Deadline* [Adversary Proceeding, Dkt. #84], therein seeking to modify the *Scheduling Order* by extending the 11/30/2020 discovery deadline to 2/28/2021 and the 12/21/2020 dispositive motion deadline to 3/22/2021, or alternatively by extending the discovery and dispositive motion deadlines to allow Plaintiff to cure any defects found in the service of propounded discovery.

13.     On 12/11/2020, after hearing the motions to dismiss the Second Amended Complaint filed by SPS and Nationstar and the *Motion for More Definite Statement* filed by Nationstar, the Court entered its order [Adversary Proceeding, Dkt. #91] dismissing the Second Amended Complaint without prejudice to amendment. The order directed Plaintiff to file a third amended complaint by 12/15/2020, limited to and consistent with the *Memorandum Opinion and Amended Judgment*. The order also stated that the Court would dismiss this adversary proceeding if it found the third amended complaint to be inconsistent with the *Memorandum Opinion and Amended Judgment*.

14.     On 12/15/2020, Plaintiff filed his *Third Amended Objection to Proof of Claim 4-1 of Nationstar Mortgage LLC and Complaint* [Adversary Proceeding, Dkt. #93; the "<u>Third Amended Complaint</u>"], which incorporated by reference the entire First Amended Complaint and the exhibits therein.

15.     On 01/4/2021, Nationstar filed an answer Plaintiff's Third Amended Complaint. [Adversary Proceeding, Dkt. #100.]   On 01/5/2021, SPS filed its motion to dismiss Plaintiff's Third Amend Complaint.  [Adversary Proceeding, Dkt. #101.]

16.     On 2/16/2021, Plaintiff filed a *Motion for Extension to File an Amended Complaint*. [Adversary Proceeding, Dkt. #115.]

17.     On 02/23/2021, Plaintiff filed a *Motion for Clarification* [Adversary Proceeding, Dkt. #118] to which Nationstar objected to on 03/16/2021 [Adversary Proceeding, Dkt. #124].

18.     On 02/24/2021, Plaintiff filed his Fourth Amended Complaint [Adversary Proceeding, Dkt. #119], and like his other amended complaints, it incorporated by reference the entire First Amended Complaints and the exhibits therein.  The instant motion to dismiss attacks this particular complaint.

19.     On 03/05/2021, the Court held a hearing and stated that Nationstar's deadline to answer or file an appropriate motion as to the Fourth Amended Complaint is March 26, 2021.

## II.
## ARGUMENT AND AUTHORITIES

**A.     Standard.**

Federal Rule of Civil Procedure 12(b)(6) (made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  In deciding a motion to dismiss, a court accepts as true all well pleaded facts and views them in the light most favorable to the claimant."  *Reliable*

*Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A formulaic recitation of the elements, because of its conclusory nature, is not entitled to the usual presumption of truth. *Ashcroft v. Iqbal*, 566 U.S. 662, 681 (2009). A plaintiff must instead plead facts, and those facts "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678.

**B.     Plaintiff fails to state a cognizable TDCA claim.**

In the Fourth Amended Complaint, Plaintiff alleges that Mr. Cooper violated several sections of the TDCA. The TDCA (Tex. Fin. Code § 392.001 et seq) prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells Fargo Bank N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2012). To state a claim under the TDCA, a plaintiff must allege that: **(1)** the debt at issue is a consumer debt; **(2)** the defendant is a "debt collector" within the meaning of the TDCA; **(3)** the defendant committed a wrongful act in violation of the TDCA; **(4)** the wrongful act was committed against the plaintiff; and **(5)** the plaintiff was injured as a result of the defendant's wrongful act. *Snowden v. Wells Fargo Bank N.A.*, 2020 WL 890382, at *5 (N.D. Tex. Jan. 27, 2020), *rec. adopted*, 2020 WL 887708 (N.D. Tex. Feb. 24, 2020). Here, Plaintiff premises his TDCA claims on allegations that Mr. Cooper "threatened to" sell the Property at a foreclosure sale. (Compl. at 57, ¶ 275.) However, Plaintiff fails to state any claim under which relief can be granted under the TDCA.

**1.     The economic loss rule bars the TDCA claims.**

The economic loss doctrine bars the TDCA claims because the claims all arise from conduct governed by the Note and Deed of Trust. In Texas, the economic loss rule "generally

precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid—Continent Cas. Co*., 242 S.W.3d 1, 12 (Tex. 2007). That is, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco Inc*., 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, "even when the breach might be reasonably viewed as a consequence of a contracting party's negligence." *Lamar Homes, Inc*., 242 S.W.3d at 13. The burden is on the plaintiff to establish evidence of an independent injury. *Esty v. Beal Bank S.S.B*., 298 S.W.3d 280, 302 (Tex. App.—Dallas 2009, no pet.).

Texas courts have routinely dismissed TDCA claims based on underlying contract disputes between the parties. *See Hammond v. Ocwen Loan Servicing, LLC*, 2014 WL 5326722, at *4 (N.D. Tex. Oct. 20, 2014) (compiling cases barring TDCA claims based on breach of contract because of the economic loss doctrine). Notably, district courts within the Fifth Circuit have applied the economic loss doctrine to TDCA claims premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender. *See Hernandez v. U.S. Bank, N.A*., 2013 WL 6840022, at *10 (N.D. Tex. Dec.27, 2013) (applying economic loss doctrine to allegations that defendants misrepresented the character and extent of plaintiffs' mortgage loan and sought other unauthorized charges); *Caldwell v. Flagstar Bank, FSB*, 2013 WL 705110, at *12 (N.D. Tex. Feb.4, 2013), *rec. adopted*, 2013 WL 705876 (N.D.T ex. Feb.26, 2013) (applying economic loss doctrine to dismiss claims under Texas Finance Code §§ 392.204(a)(8) & (19)).

In the case at bar, Plaintiff alleges that Nationstar violated the TDCA by threatening to sell the Property in violation of the Note and Deed of Trust. (Compl. at 57, ¶ 275; "Nationstar threatened to … sell the Property at a foreclosure sale without giving proper notice of the sale.") Plaintiff even alleges that Nationstar somehow had the first class postage stamps on its notices of foreclosure sale backdated in order to comply with the Deed of Trust's notice requirement (at least 21 days). (Compl. at 60, ¶ 285.) He also alleges that Nationstar assessed fees not permitted by the Note and Deed of Trust. (Compl. at 57-59, ¶¶ 276-282.) Thus, because the TDCA claims arise under the Note and Deed of Trust, they are all barred by the economic loss doctrine. *Hernandez*, 2013 WL 6840022, at *10 ("Given the liberal pleading standards, Plaintiffs' allegations are sufficient to state a claim for relief under the TDCA. However, Plaintiffs' allegations all arise from conduct governed by the Note and Deed of Trust and are therefore barred under the economic loss doctrine.") Accordingly, Plaintiff's TDCA claims in the case at bar all fail as a matter of law.

**2.      No actual damages to support a TDCA claim.**

No foreclosure sale. A plaintiff must plead and prove actual damages to prevail on a TDCA claim. *Narango v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 801 (S.D. Tex. 2010) (recognizing that Texas law requires a TDCA plaintiff to prove actual damages). Here, the only damages alleged by Plaintiff are entirely speculative. Plaintiff premises his entire suit on a threatened foreclosure. To be clear, no foreclosure sale has occurred (i.e, Plaintiff has not been deprived of any property rights). (*See generally* Compl.) Thus, Plaintiff has not suffered actual damages stemming from the mere threat of foreclosure. *See Adams v. U.S. Bank N.A.*, 2017 WL 10296307, at *6 (N.D. Tex. Dec. 4, 2017), rec. adopted, 2018 WL 4621770 (N.D. Jan. 3, 2018).

Costs are not actual damages. Plaintiff also complains about the costs associated with filing this suit, including the filing fee itself. (Compl. at 34, ¶ 130.). However, simply having to file suit does not suffice as a harm warranting actual damages. *Wilson v. Deutsche Bank Trust Co.*

*Americas*, 2019 WL 5840325, at *7 (N.D. Tex. Nov. 7, 2019) (citing *Obazee v. Bank of N.Y. Mellon*, 2015 WL 4602971, at *4 (N.D. Tex. July 31, 2015)).

<u>Bankruptcy plan payments are not actual damage</u>.  Plaintiff next complains that he "made plan payments exceeding $9,500 which have been paid out to Nationstar and Select Portfolio." (Compl. at 34, ¶ 130.)  Plaintiff voluntarily made these payments as part of his performance under the bankruptcy plan.  Thus, any TDCA violation did not cause these expenses, and they are not recoverable as damages.  *See Ledisco Fin. Servs., Inc. v. Viracola*, 533 S.W.2d 951, 957 (Tex. Civ. App.—Texarkana 1976, no writ).

### 3.    No violation of § 392.301(a)(8) (relating to threats or coercion).

Regardless of the economic loss rule or Plaintiff's inability to plead actual damages, all of the TDCA claims fail on their own.  Plaintiff first alleges that Mr. Cooper violated § 392.301(a)(8). "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ … threatening to take an action prohibited by law."  Tex. Fin. Code § 392.301(a)(8).  However, § 392.301(b)(3) clarifies that nothing in subsection (a) prevents a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."  Indeed, "[t]he right to a nonjudicial foreclosure, where it exists, is a contractual right memorialized within 'a deed of trust or contract lien.'"  *McCaig v. Wells Fargo Bank (Texas) N.A.*, 788 F.3d 463, 478 (5th Cir. 2015) (citing Tex. Prop. Code § 51.002(a)). Because a default generally triggers a mortgagee's right to foreclose under a deed of trust, district courts have recognized that § 392.301(a)(8) claims premised on a threat of foreclosure generally turn on whether the mortgage is in default.  *Id*. (citing *Wildy v. Wells Fargo Bank, N.A.*, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) ("foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on his mortgage")).

While Plaintiff maintains that Nationstar could not foreclose, he fails to allege he was current on his loan payments.[2] That is because he cannot make such a claim. As stated in this Court's *Memorandum Opinion* [Adversary Proceeding, Dkt. #65], Plaintiff failed to make on-time payments to Nationstar when he ignored a letter titled Notice of Servicing Transfer explaining that the servicing of the mortgage loan had been transferred from prior servicer CitiMortgage to Nationstar with a new payment address. [Memo. Opinion, p. 5.][3] Further, the Deed of Trust requires Plaintiff to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." [Adversary Proceeding, Dkt. #21-2, p. 68, ¶ 1 (Plaintiff previously made the Deed of Trust an attachment to his First Amended Complaint, that being Dkt. #21).]

The Deed of Trust also states that, in the event of Plaintiff's default, Nationstar may proceed with foreclosure of the Property. [Adversary Proceeding, Dkt. #21-2, p. 77, ¶ 22.] Specifically, Section 22 states that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." [*Id.*] As a result, any alleged threat of foreclosure by Nationstar was a result of Plaintiff's default and is not an action prohibited by law.

---

[2] At most, Plaintiff complains that the total payoff amount is incorrect, although he never explains *how* it is incorrect. (*See* Compl. at 11, ¶ 50.1.) In any event, Plaintiff does not allege he has made each payment due and owing on the loan.

[3] "On August 29, 2016, after the closure of their bankruptcy case, the Wigingtons received a Notice of Servicing Transfer explaining that the servicing of their mortgage loan had been transferred from CitiMortgage to Nationstar with a new payment address. The Wigingtons ignored the notice and continued to send their monthly payments to CitiMortgage at the old address. They sent check after check to CitiMortgage, month after month, at the old payment address, and they received them all back, uncashed. In total, after receiving notice that the servicing of their mortgage had been transferred to Nationstar with a new payment address, the Wigingtons sent CitiMortgage 18 checks totaling $101,222.06, each of which was returned to Mr. Wigington as undeliverable. As a result, the checks were never received by Nationstar, the checks were never negotiated, and the funds were never debited from the Wigingtons' account. After receiving notice of the transfer of the servicing of their mortgage to Nationstar, the Wigingtons also made two payments to CitiMortgage totaling $6,694.32 by electronic funds transfers, which were refunded in full by CitiMortgage."

4.      **No violation of § 392.303(a)(2) (relating to unauthorized charges).**

Plaintiff next alleges that Nationstar violated § 392.303(a)(2) of the TDCA by charging

unauthorized fees and expenses.  (Compl. at 58, ¶ 277.)  Specifically, Plaintiff complains about

late charges, property inspection fees, and legal fees related to attempts to foreclose the Property.

[Adversary Proceeding, Dkt. #21-2, p. 50-52 (Plaintiff's self-created list of alleged unauthorized

fees).]

Section 392.303(a)(2) prohibits debt collectors from "collecting or attempting to collect

interest or a charge, fee, or expense incidental to the [debt] obligation unless the interest or

incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation

or legally chargeable to the consumer."  Tex. Fin. Code § 392.303(a)(2).  In this case, the Note

and Deed of Trust authorized Nationstar to collect interest, costs, and attorney's fees if Plaintiff

defaulted.  [Adversary Proceeding, Dkt. #21-2, p. 64-65, 68-76.]  Notably, Section 14 of the Deed

of Trust provides:

> 14. Loan Charges.  Lender may charge Borrower fees for services performed in
> connection with Borrower's default, for purpose of protecting Lender's interest in
> the Property and rights under this Security Instrument, including, but not limited
> to, attorneys' fees, property inspection and valuation fees.  In regard to any other
> fees, the absence of express authority in this Security Instrument to charge a
> specific fee to Borrower shall not be construed as a prohibition on the charging of
> such fee.

> [Adversary Proceeding, Dkt. #21-2, p. 72, ¶ 14.]

Due to Plaintiff's default, Nationstar was authorized under this provision to charge for

services in connection with Plaintiff's default, including for attorney's fees, property inspections,

and valuation fees.  *See Baker v. Roundpoint Mortg. Servicing Corp*., 2019 WL 2524189, at *4

(S.D. Tex. June 19, 2019).  And, of course, the Note calls for the assessment of late fees in the

event of late or missed payments.  [Adversary Proceeding, Dkt. #21-9, p. 64, ¶ 6.]  As a result,

Plaintiff's claim for violation of this section is unfounded and should be dismissed.

**5.      No violation of § 392.304(a)(12) (relating to fraudulent or deceptive practices).**

Plaintiff next alleges that Mr. Cooper violated § 392.304(a)(12) of the TDCA by charging

unauthorized fees and expenses in a fraudulent, deceptive, or misleading way.  (Compl. at 58,

¶ 280.)  The TDCA states that a debt collector may not use a fraudulent, deceptive, or misleading

representation that employs the following practice: representing that a consumer debt may be

increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a

written contract or statute does not authorize the additional fees or charges.  Tex. Fin. Code

§ 392.303(a)(12).

As noted above, the Deed of Trust authorizes the assessment of certain fees for services

performed in connection with Plaintiff's default, including for attorney's fees, property

inspections, and valuation fees.  In addition, the Deed of Trust expressly permits such fees to

become additional debt under the loan.  Section 9 of the Deed of Trust provides as follows:

> 9. Protection of Lender's Interest in the Property and Rights Under this Security
> Instrument. ***If (a) Borrower fails to perform the covenants and agreements
> contained in this Security Instrument***, (b) there is a legal proceeding that might
> significantly affect Lender's interest in the Property and/or rights under this
> Security Instrument (such as a proceeding in bankruptcy, probate, for
> condemnation or forfeiture, for enforcement of a lien which may attain priority over
> this Security Instrument or to enforce laws or regulations), or (c) Borrower has
> abandoned the Property, then Lender may do and pay for whatever is reasonable or
> appropriate to protect  Lender's interest in the Property and rights under this
> Security Instrument, including protecting and/or assessing the value of the
> Property, and securing and/or repairing the Property. Lenders actions can include,
> but are not limited to: (a) paying any sums secured by a lien which has priority
> over this Security Instrument (b) appearing in court; and (c) ***paying reasonable
> attorneys' fees to protect its interest in the Property*** and/or rights under this
> Security Instrument, including its secured position in a bankruptcy proceeding.
> Securing.
>
> ***
>
> ***Any amounts disbursed by Lender under this Section 9 shall become additional
> debt of Borrower secured by this Security Instrument.***

[Adversary Proceeding, Dkt. #21-2, p. 71 (emphasis added).]

Because Plaintiff breached the Deed of Trust by not making his mortgage payments, Nationstar was authorized under Section 9 of the Deed of Trust to do and pay for whatever was necessary to protect its rights in the Property encumbered by the Deed of Trust, and to add to Plaintiff's debt the amount expended in doing so. *See Bartolowits v. Wells Fargo Bank, N.A.*, 2016 WL 1436430, at *10 (N.D. Tex. April 11, 2016).

### 6.      No violation of § 392.304(a)(15) (relating to postal laws and regulations).

Lastly, Plaintiff alleges that Nationstar violated § 392.304(a)(15) of the TDCA by violating the Mailing Standards of the United States Postal Service, Domestic Mail Manual Section 4.6.2(a). (Compl. at 60, ¶ 284.)   Indeed, the TDCA states that a debt collector may not use a written communication that violates United States postal laws and regulations.   Tex. Fin. Code § 392.304(a)(15).   However, Plaintiff fails to describe the terms of the United States Postal Service, Domestic Mail Manual Section 4.6.2(a) or otherwise describe how Nationstar violated the regulation, and he fails to address how he suffered injury from the alleged violation.   Thus, Plaintiff's allegation that Nationstar violated a law or regulation of the Postal Service is baseless and not supported by the Fourth Amended Complaint.

## C.      Plaintiff fails to state a cognizable DTPA claim.

Plaintiff alleges that Nationstar violated the DTPA.   He premises the DTPA claim on the allegations addressed above, namely, that Nationstar attempted to foreclose without providing proper notice to Plaintiff.   (Compl. at 63, ¶ 307.)   However, Plaintiff cannot invoke the DTPA because he is not a "consumer" as defined by the statute.   *See Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (in all cases, a plaintiff must qualify as a "consumer" in order to have standing to bring an action under the DTPA); *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex. 1984).

The elements of a cause of action under the DTPA are: "**(1)** the plaintiff is a consumer, **(2)** the defendant engaged in false, misleading or deceptive acts, and **(3)** these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint."  Tex. Bus. & Com. Code § 17.45(4); *Cameron v. Terrell & Garrett, Inc*., 618 S.W.2d 535, 539 (Tex. 1981).[4]

Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA.  *See Walker v. Fed. Deposit Ins. Corp*., 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980)).  Likewise, the servicing of an existing loan does not involve a good or service.  *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011); *Hansberger v. EMC Mortg. Corp*., 2009 WL 2264996 (Tex. App.—San Antonio July 29, 2009, pet. denied) (citing *Maginn v. Norwest Mortg. Inc*., 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no pet.) (finding loan servicing to be an ancillary service not contemplated by the DTPA)); *Porter v. Countrywide Home Loans, Inc*., 2008 WL 2944670, at *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction.").

Here, Plaintiff's allegations (i.e., the alleged improper attempt to foreclose) all arise out of the servicing of the mortgage loan.  Such allegations cannot confer consumer status on Plaintiff

---

[4] Consumer status is also required to maintain a claim under the DTPA even through a "tie-in" statute such as the TDCA. *See Deubler v. The Bank of New York Mellon*, 2015 WL 3750312, at *6 (Tex. App.—Amarillo June 15, 2015, pet. denied); *Cushman v. GC Services, L.P.*, 397 Fed. App'x 24, 28 (5th Cir. 2010) ("Although the text of section 17.50(h) [of the Texas Business and Commerce Code] distinguishes the type of damages that DTPA plaintiffs bringing claims through 'tie-in' statutes may recover, it does not exempt those claimants from proving consumer status.").

and thus cannot form the basis of a DTPA claim.  *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (when a complaint is based on a "pure loan transaction," the plaintiffs do not qualify as consumers under the DTPA); *Hurd v. BAC Home Loans Servicing, L.P.*, 880 F. Supp. 2d 747, 765-66 (N.D. Tex. Mar. 29, 2012).  Accordingly, Nationstar is entitled to an order dismissing Plaintiff's DTPA claim with prejudice.

**D.      Plaintiff fails to state a cognizable breach of contract claim.**

Plaintiff asserts a breach of contract claim against Nationstar.  The claim is based on allegations that include Nationstar provided less than 30 days for Plaintiff to cure his default on the mortgage loan, and that Nationstar later provided less than 21 days' notice of the resulting foreclosure sale (both requirements of Section 22 of the Deed of Trust). (Compl. at 66-70, ¶¶ 330-335.)

To succeed on a breach of contract claim under Texas law, a plaintiff must show: "**(1)** the existence of a valid contract; **(2)** performance or tendered performance by the plaintiff; **(3)** breach of contract by the defendant; and **(4)** damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).  As for the second element—performance or tendered performance—simply put, a plaintiff cannot maintain a breach of contract claim when he has not tendered performance himself.  *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (party to a contract who is himself in default cannot maintain a suit for its breach).

**1.      Plaintiff failed to perform or tender performance.**

As already noted by this Court in its *Memorandum Opinion*, Plaintiff failed to make on-time payments to Nationstar when he ignored a letter titled Notice of Servicing Transfer explaining that the servicing of the mortgage loan had been transferred from prior servicer CitiMortgage to Nationstar with a new payment address.  [Adversary Proceeding, Dkt. #65, p. 5.]  In addition, he

has not alleged that Nationstar prevented him from meeting his own contractual obligations. Plaintiff's delinquency in satisfying his part of the bargain precludes his breach of contract claim as a matter of law. *Adams v. U.S. Bank, N.A.*, 2017 WL 10296307, at *6 (N.D. Tex. Dec. 4, 2017), *rec. adopted*, 2018 WL 4621770 (N.D. Tex. Jan. 3, 2018). For this reason, Plaintiff is unable to maintain any breach of contract claim against Nationstar, and all breach claims should be dismissed.

### 2.   No actual damages to support the breach of contract claim.

As noted above, Plaintiff premises his entire suit on a <u>threatened</u> foreclosure. To be clear, no foreclosure sale has occurred that would actually deprive Plaintiff of any property rights. (*See generally* Compl.) Thus, Plaintiff has not suffered actual damages stemming from the mere threat of foreclosure. *Adams v. U.S. Bank N.A.*, 2017 WL 10296307, at *6 (N.D. Tex. Dec. 4, 2017), *rec. adopted*, 2018 WL 4621770 (N.D. Jan. 3, 2018) (characterizing the alleged breach of contract damages as "a threat of damages rather than actual damages suffered"); *De La Mora v. CitiMortgage, Inc.*, 2015 WL 12803712, at *2 (S.D. Tex. Jan. 26, 2015) ("Plaintiff cannot show damages resulting from any such breach because no foreclosure sale has occurred."). Without actual damages—an essential element of a breach claim—Plaintiff is unable to maintain any breach of contract claim, and all breach claims asserted should be dismissed.

### E.   Plaintiff fails to state a cognizable negligence claim.

Plaintiff asserts causes of action against Mr. Cooper for negligence (Compl. at 72) and negligence per se (Compl. at 73). Both claims fail as a matter of law.

### 1.   The economic loss rule bars Plaintiff's negligence claims.

Under the economic loss doctrine, a duty in tort does not lie when the only injury claimed is for economic damages recoverable under a breach of contract claim. *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In other

words, the economic loss doctrine precludes recovery of economic losses in tort when the loss is
the subject matter of a contract between the parties. *See Watson v. CitiMortgage, Inc.*, 2012 WL
381205, at *9 (E.D. Tex. Feb. 3, 2012); *Williams v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 443986, at
*3 (N.D. Tex. Feb. 13, 2012); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d
282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Under the economic loss doctrine, if a
defendant's conduct gives rise to liability only because it breached the parties' agreement, then the
plaintiff's claim sounds only in contract. *Salisbury v. Federal Home Loan Mortg. Corp.*, 2012
WL 372545, at *3 (E.D. Tex. Aug. 27, 2012). Stated another way, if the only duty owed is created
by contract, then the economic loss doctrine applies. *Singh v. JPMorgan Chase Bank, N.A.*, 2012
WL 669952, at *11 (E.D. Tex. Jan. 31, 2012), *rec. adopted*, 2012 WL 669983 (E.D. Tex. Feb. 29,
2012). Under these circumstances, a plaintiff's losses are addressed more appropriately via a
breach of contract claim rather than through tort claims. *Sharyland Water Supply v. City of Alton*,
354 S.W.3d 407, 418 (Tex. 2011).

Here, there is no dispute that Plaintiff's negligence claims stem from the Note and Deed of
Trust and Nationstar's alleged failure to perform its side of the loan agreement. Plaintiff pleads as
much. (Compl. at 72, ¶ 373, discussing Nationstar's "legal duty to Plaintiff [to] conduct any
foreclosure sale under the Deed of Trust.") Because Plaintiff's alleged injuries and Nationstar's
alleged liability stem from the Note and Deed of Trust, Plaintiff's negligence claims are barred as
a matter of law. *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155 at *5-6 (N.D. Tex. 2012).

### 2. Negligence claims fail because Nationstar owes no duty to Plaintiff.

To prevail on a negligence claim, Plaintiff must show that: **(1)** Nationstar owed him a legal
duty; **(2)** Mr. Cooper breached the duty; and **(3)** Plaintiff suffered damages as a result of the breach.
"The threshold inquiry regarding a … negligence claim is whether a legal duty existed." *RT Realty,
L.P. v. Tex. Utils. Elec. Co.*, 181 S.W.3d 905, 914 (Tex. App.—Dallas 2006, no pet.).

"In the mortgage context, there is no special relationship between a mortgagor and a mortgagee, or between a servicer and a borrower, that would impose an independent common law duty on [defendant]." *Miller v. CitiMortgage, Inc*., No. 3:11–CV–2786–L, 970 F. Supp. 2d 568, 585 (N.D. Tex. 2013) (collecting cases); *see Levels v. Merlino*, 969 F. Supp. 2d 704, 717 (N.D. Tex. 2013) ("Many Texas courts have addressed whether the relationship between a mortgagor and a mortgagee constitutes a 'special relationship' and have consistently concluded that it does not."). Thus, because Texas does not recognize a common law duty between a mortgagee and mortgagor, there can be no cognizable negligence claims against Nationstar.

**3.      Negligence claims fail because Plaintiff suffered no damages.**

As a reminder, Plaintiff premises his entire suit on a <u>threatened</u> foreclosure. To be clear, no foreclosure sale has occurred that would actually deprive Plaintiff of any property rights. (*See generally Compl*.) Thus, Plaintiff has not suffered actual damages stemming from the mere threat of foreclosure. *Adams v. U.S. Bank N.A*., 2017 WL 10296307, at *6 (N.D. Tex. Dec. 4, 2017), *rec. adopted*, 2018 WL 4621770 (N.D. Jan. 3, 2018); *De La Mora v. CitiMortgage, Inc*., 2015 WL 12803712, at *2 (S.D. Tex. Jan. 26, 2015). Without injury—an essential element of a negligence claim—Plaintiff is unable to maintain any negligence claim against Nationstar.

**4.      The negligence per se claim likewise fails because there is no private right of action and Nationstar has not violated Chapter 51 of the Property Code.**

<u>Negligence per se explained</u>. Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person. *Carter v. William Sommerville & Son, Inc*., 584 S.W.2d 274, 278 (Tex. 1979). "Negligence per se is not a separate cause of action that exists independently of a common-law negligence cause of action …. Rather, negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action." *Thomas v. Uzoka*, 290 S.W.3d

437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see Smith v. Merritt*, 940 S.W.2d

602, 607 (Tex. 1997) ("Negligence per se is a common-law doctrine in which a duty is imposed

based on a standard of conduct created by a penal statute rather than on the reasonably prudent

person test used in pure negligence claims."). "The threshold questions in every negligence per se

case are whether the plaintiff belongs to the class that the statute was intended to protect and

whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.*,

973 S.W.2d 301, 305 (Tex. 1998).

No private right of action under Chapter 51 of the Property Code. The negligence-based

claims premised on alleged violations of the Texas Property Code § 51.002 (a), (b) and (d) fail

because there is no private right of action under that statute. Indeed, § 51.002 contains no language

or provision creating a private cause of action. *Ashton v. BAC Home Loans Servicing, L.P.*, 2013

WL 3807756, at *4 (S.D. Tex. July 19, 2013) ("This Court has not found any cases that interpret

section 51.002 to establish an independent right of action for damages. The section also does not

contain its own enforcement mechanism."); *Solis v. U.S. Bank, N.A., 2017 WL 4479957*, at *2

(S.D. Tex. June 23, 2017) ("Accordingly, because § 51.002 does not provide the Solises a private

right of action, the claim fails as a matter of law and the Court dismisses the claim."); *Anderson v.

CitiMortgage*, 2014 WL 2983366, at *5 (E.D. Tex. July 2, 2014) ("Under Texas law, there is no

independent cause of action for breach of section 51.002.").

Even if Plaintiff had a private right of action, his claims fail. Chapter 51 of the Texas

Property Code governs the procedure for enforcing the power of sale conferred by a deed of trust

or other lien contract. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 569 (Tex.

2001) ("Section 51.002 establishes the procedures for conducting a foreclosure sale."). Further,

administration of a foreclosure sale requires that certain notices be made to the borrower. For

instance, § 51.002(b) of the Property Code requires that notice of the sale must be provided to the debtor noticing the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified may on each debtor."  The notice must also be sent via certified mail.  *Id.* § 51.002(e).  In order to calculate the days, the entire calendar day on which the notice of sale is given, regardless of the time of day at which the notice is given, is included in computing the 21-day notice period required by Subsection (b), and the entire calendar day of the foreclosure sale is excluded.  *Id.* § 51.002(g).

Plaintiff asserts that Nationstar violated Chapter 51 when it noticed a sale for July 4, 2017 in a county in which the home was not located.  (Compl. at 69, ¶¶ 346-347.)  However, Plaintiff later shows that a subsequent notice of sale was provided, this one for the correct county—Dallas County—noticing a foreclosure sale for August 1, 2017.  [Adversary Proceeding, Dkt. #21-5, Ex. 33, p. 17 (notice of sale dated July 10, 2017, noticing a sale for August 1, 2017).]  Thus, this claimed violation is moot, in addition to being unsupported by any authority.

Plaintiff also asserts that Nationstar violated § 51.002(e) by not mailing the second notice of sale by certified mail.  (Compl. at 69, ¶ 348.)  However, the face of Plaintiff's own exhibit states that the notice was "sent by certified mail return receipt requested and by regular mail." [Adversary Proceeding, Dkt. #21-5, Ex. 33, p. 17.] Thus, this claimed violation is wholly unsupported by Plaintiff's own pleading and evidence.

Plaintiff goes on to allege that Nationstar violated § 51.002(g) by failing to serve written notice of the August 1, 2017 sale by certified mail to the Plaintiff at least 21 days before the date of the foreclosure sale.  (Compl. at 69, ¶ 348.)  As a result, Plaintiff states that Nationstar did not meet the time restrictions of § 51.002(g) because he received the notice of sale on July 13, 2017.

(Compl. at 70, ¶¶ 351-355.)  However, the Texas Property Code clarifies that "[s]ervice of notice under this section by certified mail is complete <u>when the notice is deposited</u> in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address …."  Tex. Prop. Code § 51.002(e) (emphasis added).  Thus, a party foreclosing on property is not required to demonstrate that the debtor actually received the necessary notice.  *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (synthesizing Texas state law); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Hous. Omni US Co. v. Southtrust Bank Corp.*, WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] Apr. 30, 2009, no pet.).

Here, the notice of foreclosure sale was dated July 10, 2017 and was sent to Plaintiff's address via certified mail and regular mail.  [Adversary Proceeding, Dkt. #21-5, Ex. 33, p. 17.] Thus, the requirements of § 51.002(b) were satisfied when the notice of sale was deposited for delivery to Plaintiff's address via certified mail on July 10, 2017, as it was 21 days before the date of the foreclosure sale.  *Bittinger v. Wells Fargo Bank, N.A.*, 2011 WL 5415664, at *9, (S.D. Tex. 2011) (analyzing § 51.002(b) of the Texas Property Code and synthesizing Texas law).

**F.    Plaintiff's tort claim of unreasonable collection efforts fails as a matter of law.**

Plaintiff asserts a claim for unreasonable collection efforts.  (Compl. at 76, ¶¶ 405-423.) The intentional tort claim of unreasonable collection efforts "requires a showing that debt collection efforts 'amount[ed] to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'"  *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App.—Dallas 2008, no pet.).

Although Texas courts have not clearly defined the elements of this tort and have stated that "the conduct deemed to constitute an unreasonable collection effort varies from case to case,"

*EMC Mortgage*, 252 S.W.3d at 868, a number of federal district courts have enforced the *EMC Mortgage* definition literally and have required that plaintiffs show that the willful course of harassment was intended to inflict both mental anguish <u>and</u> bodily harm. *See Meyers v. Bank of Am., N.A.*, 2012 WL 1107687, at *4 (E.D. Tex. Mar. 31, 2012) (dismissing claim because there was "no allegation that the Defendant's collection efforts were intended to inflict bodily harm"); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 747 F.Supp.2d 794, 818 (S.D. Tex. 2010) (granting summary judgment because, *inter alia*, no showing of intent to inflict bodily harm); *Moye v. Fed. Home Loan Mortg. Corp.*, 2012 WL 3048858, at *5 (S.D. Tex. July 25, 2012) (same, in context of motion to dismiss). Likewise, the Fifth Circuit has concluded that a district court did not err in adopting the *EMC Mortgage* standard. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. App'x 200, 204-05 (5th Cir. 2012).

Courts generally limit this tort to actual collection efforts (such as telephone calls that seek to collect on a debt) as opposed to communications or conduct concerning other aspects of the debtor's loan (such as actions concerning loan modification). *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App. 1967, writ ref'd n.r.e.) (in considering what constitutes collection efforts, distinguishing between communications to debtor and mistakes in handling account). Texas courts have found the following evidence sufficient to state a cause of action for unreasonable debt collection:

- Sending a large man to the plaintiff's home, who "yelling and screaming, demanded the keys to the house, and told the [Plaintiff's] family to get out." *EMC Mortg. Corp.*, 252 S.W.3d at 864, 870.

- Falsely accusing the plaintiff of committing a crime to collect a debt. *Lloyd v. Myers*, 586 S.W.2d 222, 227 (Tex. Civ. App.—Waco 1979, writ ref'd n.r.e.).

- Sending a large man to the plaintiff's home, who stood over the plaintiff shouting, shaking his finger and calling him a liar. *Credit Plan Corp. of Houston v. Gentry*, 516 S.W.2d 471, 475 (Tex. Civ. App.—Houston [14th Dist.] 1974), *rev'd on other grounds*, *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex. 1975).

- Sending a representative to the plaintiff's home, confronting and embarrassing the plaintiff's fiancée in front of social guests. *Bank of N. Am. v. Bell*, 493 S.W.2d 633, 635 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ).

- Calling the plaintiff five times in one night, with the final call including a threat of personal violence. *Pioneer Finance & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

Here, Plaintiff references the sending of communications such as "mortgage statements, notices of change of servicer, notices of default, notices of acceleration, notices of foreclosure sales, payoff statements, modification offers" and the like. (Compl. at 76, ¶ 406.) He also complains about routine lender services such as "paying property taxes, homeowner's insurance premiums, directing Plaintiff's homeowner's insurance provider to change standard mortgagee clause, requesting tax invoices be sent to them by tax authorities." (Compl. at 76, ¶ 406.) However, as courts have made clear, such allegations do not support an unreasonable collection practices claim. *Richardson v. Wells Fargo Bank, N.A.*, 873 F.Supp.2d 800, 814 (N.D. Tex. 2012) (holding that the following did not constitute collection efforts: intentionally misleading and delaying plaintiff to point of foreclosure; assessing late charges, penalties, and other additional charges; and improperly placing property in foreclosure); *Rhodes v. Wells Fargo Bank, N.A.*, 2012 WL 5363424, at *28 (N.D. Tex. Oct. 31, 2012) (collecting cases). Accordingly, because Plaintiff has not (and cannot) allege that Nationstar willfully harassed him with the intent to inflict mental anguish and bodily harm, the claim for unreasonable collection efforts should be dismissed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED Nationstar Mortgage LLC d/b/a Mr. Cooper respectfully prays that this Court:

(A) Dismiss Plaintiff's Fourth Amended Complaint with prejudice to refiling as to Mr. Cooper; and

(B) Grant Mr. Cooper such other relief, in equity or at law, to which it may show itself

justly entitled.


Dated:  March 26, 2021                    Respectfully submitted,

                                          */s/ Matthew D. Durham*
                                          Matthew D. Durham
                                          SBN: 24040226
                                          **McGuireWoods LLP**
                                          2000 McKinney Avenue, Suite 1400
                                          Dallas, Texas 75201
                                          (214) 932-6400
                                          (214) 932-6499 (fax)
                                          **ATTORNEY FOR DEFENDANT
                                          NATIONSTAR MORTGAGE LLC
                                          D/B/A MR. COOPER**

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, the undersigned served a true and correct coy of

the foregoing as follows:

George Dale Wigington
2451 Elm Grove Road
Wylie, Texas 75098
*By email:* dalewig10@verizon.net
*& ECF/CM Delivery*
***Pro Se Plaintiff***


Yoshie Valadez
McCarthy & Holthus, LLP
1255 W. 15th Street, Suite 1060
Plano, Texas 75075
*By email:* yvaladez@McCarthyHolthus.com
*& ECF/CM Delivery*
***Attorney for Select Portfolio Servicing Inc.***


/s/ Matthew D. Durham
Matthew D. Durham